BRADY BROWN, SR. *v.* TOWN OF BRANFORD
(4694)

SPALLONE, BIELUCH and BERDON, Js.

Argued March 10—decision released August 18, 1987

*Jarvis White,* with whom, on the brief, was *Fred H. White, Jr.,* for the appellant (plaintiff).

*Vincent J. Beirne,* for the appellee (defendant).

SPALLONE, J. The plaintiff appeals from the judgment rendered after the trial court granted the defendant's motion to strike. The plaintiff claims that the trial court erred in striking both counts of the two count complaint because (1) the first count properly alleged wilful and intentional negligence, and (2) the second count properly alleged a positive act by the defendant that created liability for nuisance. We find no error.

On December 8, 1980, while walking along property owned by the defendant town of Branford, the plaintiff was struck by a motorcycle being driven by an unidentified youth. On August 20, 1982, the plaintiff brought this action in two counts. In the first count, the plaintiff sought to hold the defendant liable on the ground that it failed adequately to police and supervise the area. In his second count, the plaintiff claimed a right of recovery under the theory of nuisance.

The plaintiff filed an amended complaint on February 6, 1984, after the trial court had granted the defendant's motion to strike. In response to this amended complaint, the defendant filed a second motion to strike on September 6, 1984. This second motion was not acted on by the trial court because the plaintiff again amended his complaint. In response to this last amendment, the defendant filed a third motion to strike, which was scheduled for hearing at short calendar. This third motion to strike was granted by the court when the plaintiff failed to appear at the hearing. Although the record reveals that the plaintiff filed a memorandum opposing the motion to strike on the day of the hearing, the memorandum was not in the trial court file when the trial court granted the motion.

The plaintiff subsequently filed a motion to reargue the third motion to strike. The trial court granted the motion to reargue and, after a hearing, again granted the motion to strike on September 10, 1985. This appeal ensued.

I

The plaintiff first claims that the trial court erred in striking count one because that count properly alleged "willful, wanton and intentional negligence." To decipher the scope of the plaintiff's allegations, it is necessary to put these terms in context. The term "intent" " 'denote[s] that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to follow from it.' " *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 101, 491 A.2d 368 (1985), quoting 1 Restatement (Second), Torts § 8A (1965). "Wanton" misconduct " 'is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of action.' " *Markey* v. *Santangelo,* 195 Conn. 76, 78, 485 A.2d 1305 (1985), quoting *Bordonaro* v. *Senk,* 109 Conn. 428, 431, 147 A. 136 (1929). See also *State* v. *Alterio,* 154 Conn. 23, 26, 220 A.2d 451 (1966) (wanton misconduct equated with wilful misconduct). Finally, negligence has long been defined as "the failure to use that degree of care for the protection of another that the ordinarily reasonably careful and prudent [person] would use under like circumstances." *Temple* v. *Gilbert,* 86 Conn. 335, 340, 85 A. 380 (1912). See also *Hoelter* v. *Mohawk Service, Inc.,* 170 Conn. 495, 501, 365 A.2d 1064 (1976); *State* v. *Russo,* 38 Conn. Sup. 426, 431, 450 A.2d 857 (1982). It signifies "a want of care in the performance of an act, by one having no positive intention to injure the person complaining of it." *Pitkin* v. *New York & New Eng. R.R. Co.,* 64 Conn. 482, 490, 30 A. 772 (1894). Because the plaintiff has used these incompatible terms in a single count, we must determine under which

theory the plaintiff was pleading. See *Kostiuk* v. *Queally,* 159 Conn. 91, 94, 267 A.2d 452 (1970) (negligence and wilful and wanton misconduct are separate and distinct causes of action).

In paragraph six of his amended complaint, the plaintiff alleges that the harm done to him "was due to the willful and wanton negligence and carelessness of the defendant, its employees, servants and/or agents."[1] This paragraph lists five circumstances in which the defendant allegedly failed to act, which the plaintiff alleges were done "intentionally and knowingly."[2] Paragraph seven then states that "[a]s a result of the *negligence* of the defendant as aforesaid," (emphasis added) the plaintiff received certain injuries.

---

[1] The plaintiff's original complaint alleged in paragraph six that the accident "was due to the negligence and carelessness of the defendant, its employees, servants and/or agents." After two motions to strike by the defendant and two amended complaints by the plaintiff, the only relevant change to this allegation was that the accident was caused by "the *willful and wanton* negligence and carelessness" (emphasis added) of the defendant.

[2] Paragraph 6 of the plaintiff's final amended complaint reads:

"6. Said occurance [sic] was due to the willful and wanton *negligence* and carelessness of the defendant, its employees, servants and/or agents in one or more of the following respects:

"(a) The defendant intentionally and knowingly failed to maintain adequate and effective police patrols in the Branford Supply Pond area;

"(b) The defendant intentionally and knowingly failed to arrest and prosecute criminal violations in the Branford Supply Pond area;

"(c) The defendant intentionally and knowingly failed to investigate and/or act upon resident and eye witness complaints in the Branford Supply Pond area;

"(d) The defendant intentionally and knowingly failed to take any reasonable action that would alleviate the aforementioned conditions;

"(e) Said conditions were knowingly and intentionally allowed by the defendant to persist and so create a dangerous situation toward individuals and property in the area of the Branford Supply Pond, because the defendant intentionally and deliberately encouraged and promoted the said youth activity conditions to exist in the area of the Branford Supply Pond so that the conditions would not spread to or exist in other, more preferential areas of the town of Branford such as the Branford Green, and down town Branford area." (Emphasis added.)

In its memorandum of decision, the trial court, indicated that the plaintiff's "change in characterization" of the acts previously described as negligent did not further the plaintiff's position. We agree. A plaintiff cannot transform a negligence count into a count for wilful and wanton misconduct merely by appending a string of adjectives to allegations that clearly sound in negligence. See *Kostiuk* v. *Queally,* supra, 94; *Dumond* v. *Denehy,* 145 Conn. 88, 90–91, 139 A.2d 58 (1958). In this case, the plaintiff's injection of the words "intentionally and knowingly" in his amended complaint failed to constitute additional factual allegations that would alter the nature of the conduct complained of. In the absence of such additional factual allegations, therefore, we construe the plaintiff's first count as sounding in negligence.

Having determined that the allegations set forth by the plaintiff in his first count create a cause of action sounding in negligence, we must now decide whether the trial court erred in striking this count. In doing so, "we must take the facts to be those alleged in the plaintiff's complaint as amended, and must construe the complaint in the manner most favorable to the pleader." *Sheets* v. *Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 472, 427 A.2d 385 (1980); *Amodio* v. *Cunningham,* 182 Conn. 80, 82, 438 A.2d 6 (1980). In its memorandum of decision, the trial court found that the plaintiff's cause of action in negligence was barred by the doctrine of governmental immunity.

It has long been the law in Connecticut that "[a] municipality is immune from liability for the performance of governmental acts, as distinguished from ministerial acts. Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature." *Gauvin* v. *New Haven,* 187 Conn. 180, 184, 445 A.2d 1 (1982). See also *Tango* v. *New Haven,* 173 Conn. 203, 204–205, 377 A.2d

284 (1977); *Lambert* v. *New Haven,* 129 Conn. 647, 649, 30 A.2d 923 (1943); *Richmond* v. *Norwich,* 96 Conn. 582, 588, 115 A. 11 (1921). A fair reading of the allegations reveals that the plaintiff is complaining of the failure of the defendant to undertake various actions of a police nature. See *Wysocki* v. *Derby,* 140 Conn. 173, 175, 98 A.2d 659 (1953) (city's management of public park is a governmental function). The promotion of the comfort, safety and the overall welfare of the general public constitutes a recognized public service; *Katz* v. *Brandon,* 156 Conn. 521, 532, 245 A.2d 579 (1968); and such public service indisputably involves the exercise of police power which is " 'the supreme power of government.' " *Barnes* v. *New Haven,* 140 Conn. 8, 16, 98 A.2d 523 (1953). See also 18 E. McQuillan, Municipal Corporations (3d Ed. Rev.) § 53.22c. "Liability for the negligent performance of a purely public governmental duty may occur only when a statute so provides." *Wysocki* v. *Derby,* supra, 175. Since there is no statutory exception to the application of the doctrine of governmental immunity in this case, we cannot say that the trial court erred in striking the first count of the plaintiff's complaint.[3]

## II

The plaintiff's second claim of error is that the trial court erred in striking the second count of the amended complaint. This count alleged that the defendant was liable under the theory of nuisance.

A Connecticut municipality may be liable for a nuisance only when "it was created by some positive act

---

[3] Because it is apparent from the face of the complaint that the municipality was engaging in a governmental function while performing the acts and omissions complained of by the plaintiff, the defendant was not required to plead governmental immunity as a special defense and could attack the legal sufficiency of the complaint through a motion to strike. See *Trzaska* v. *City of Hartford,* 12 Conn. Sup. 301, 302 (1943).

of the municipality." *Lukas* v. *New Haven,* 184 Conn. 205, 209, 439 A.2d 949 (1981). For the plaintiff to have set forth a legally sufficient claim in the second count, he was required to allege sufficient facts to establish that the town of Branford undertook a positive act which created the nuisance complained of.

Paragraph thirteen of the plaintiff's complaint, although perfunctorily stating that "the said nuisance was deliberately created by the defendant," recites nothing but a litany of acts amounting at most to a permissive continuation of the alleged nuisance.[4] Our Supreme Court has drawn a distinction between the creation of a nuisance and the intentional maintenance of a nuisance, holding that a "[f]ailure to remedy a dangerous condition not of the municipality's own making is not the equivalent of the required positive act." *Wright* v. *Brown,* 167 Conn. 464, 470, 356 A.2d 176 (1975). See also *Brennan* v. *West Haven,* 151 Conn. 689, 693, 202 A.2d 134 (1964); *Sheeler* v. *Waterbury,* 138 Conn. 111, 116, 82 A.2d 359 (1951).

A reading of the allegations in the light most favorable to the plaintiff discloses that the nuisance, if any, was created by the behavior of the youths who congregated in the area where the plaintiff was walking.[5]

---

[4] Paragraph thirteen of the plaintiff's final amended complaint provides in part: "The condition constituting the said nuisance was deliberately created by the defendant, its employees, servants and/or agents in one or more of the following respects." The remainder of this paragraph states essentially the same allegations found in paragraph six, subsections (a) to (e) in the first count of the complaint. See footnote 2, supra.

[5] Paragraph four of the plaintiff's amended complaint described the condition alleged to be a nuisance as follows: "On said date, and for a long time prior thereto, there existed in said area of public land known as Branford Supply Pond, an unsafe and dangerous condition which was the source of numerous complaints from area residents, in that it has been used and frequented by youths from Branford and surrounding towns as a motorcycle race course and as an area where they could congregate, drink alcohol, use drugs and carouse not subject to any control."

There is no logical nexus by which to attribute any of the acts of the youths to the defendant. The trial court, therefore, was correct in finding the plaintiff's second count insufficient as a matter of law. See *Murray* v. *Milford,* 380 F.2d 468 (2d Cir. 1967); *Karnasiewicz* v. *New Britain,* 131 Conn. 691, 42 A.2d 32 (1945); *Bacon* v. *Rocky Hill,* 126 Conn. 402, 11 A.2d 399 (1940).

There is no error.

In this opinion the other judges concurred.