# IN RE WILLIAM D.*
## (SC 17783)

Rogers, C. J., and Katz, Palmer, Zarella and Schaller, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 21—officially released November 13, 2007

*D. Keith Foren,* assistant public defender, for the appellant (respondent).

*Maura Murphy Osborne,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan Quinn Cobb,* assistant attorney general, for the appellee (petitioner).

*Opinion*

KATZ, J. The sole issue in this certified appeal is whether the Appellate Court properly concluded that the term "child," as used in General Statutes § 46b-141 (b),[1] which permits the trial court to extend a delin-

---

[1] General Statutes § 46b-141 provides in relevant part: "(a) Except as otherwise limited by subsection (i) of section 46b-140, commitment of children convicted as delinquent by the Superior Court to the Department of Children and Families shall be for (1) an indeterminate time up to a maximum of eighteen months, or (2) when so convicted for a serious juvenile offense, up to a maximum of four years at the discretion of the court, unless extended as hereinafter provided.

quency commitment when "such extension is for the best interest of the child," refers to the status of that person at the time of commitment, rather than at the time that the court entertains the application to extend the commitment.[2] The respondent, William D., appeals from the judgment of the Appellate Court concluding that the trial court had jurisdiction to grant the motion of the petitioner, the commissioner of children and families, for an extension of the respondent's delinquency commitment despite the fact that the respondent, then sixteen years old, was not a child, as defined under General Statutes § 46b-120 (1),[3] at the time the court

"(b) The Commissioner of Children and Families may file a motion for an extension of the commitment as provided in subdivision (1) of subsection (a) beyond the eighteen-month period on the grounds that such extension is for the best interest of the child or the community. The court shall give notice to the parent or guardian and to the child at least fourteen days prior to the hearing upon such motion. The court may, after hearing and upon finding that such extension is in the best interest of the child or the community, continue the commitment for an additional period of not more than eighteen months. Not later than twelve months after a child is committed to the Department of Children and Families in accordance with subdivision (1) of subsection (a) of this section the court shall hold a permanency hearing in accordance with subsection (d) of this section. After the initial permanency hearing, subsequent permanency hearings shall be held not less frequently than every twelve months while the child remains committed to the Department of Children and Families. . . ."

[2] We granted the respondent's petition, limited to the following issue as framed by the respondent: "Whether the Appellate Court properly concluded that the term 'child' as used in . . . § 46b-141 (b) did not have the meaning defined under General Statutes § 46b-120 (1), but rather referred to a person who was previously committed as a delinquent under the provisions of § 46b-141 (a)?" *In re William D.*, 280 Conn. 943, 912 A.2d 479 (2006). Upon reviewing the Appellate Court's opinion, we have rephrased the issue because we conclude that the Appellate Court did not apply a different meaning for the term "child" than that prescribed in § 46b-141 (b), but, rather, qualified the temporal lens through which that definition applies to refer to the time of commitment. See *Ankerman* v. *Mancuso*, 271 Conn. 772, 777, 860 A.2d 244 (2004) (rephrasing certified issue to reflect more precisely issue after reviewing record and briefs).

[3] General Statutes § 46b-120 provides in relevant part: "The terms used in this chapter shall, in its interpretation and in the interpretation of other statutes, be defined as follows: (1) 'Child' means any person under sixteen years of age and, for purposes of delinquency matters, 'child' means any

granted the motion. *In re William D.*, 97 Conn. App. 600, 601–602, 905 A.2d 696 (2006). We affirm the Appellate Court's judgment.

The Appellate Court's opinion sets forth the following undisputed facts and procedural history. "The respondent was born on May 14, 1988. On November 13, 2003, after he had been adjudicated as delinquent,[4] the court ordered that the respondent be committed to the custody of the [petitioner] for a period not to exceed eighteen months, which would expire on May 13, 2005. At that time, the respondent also was advised that his commitment could be extended for an additional period not to exceed eighteen months. The respondent was then placed at the Connecticut Juvenile Training School . . . . Beginning in January, 2005, the respondent was paroled from [that] school and permitted to live with his grandmother and to attend public high school. Shortly thereafter, the respondent began to have problems at school and tested positive for drugs on multiple occasions.

person (A) under sixteen years of age, or (B) sixteen years of age or older who, prior to attaining sixteen years of age, has violated any federal or state law or municipal or local ordinance, other than an ordinance regulating behavior of a child in a family with service needs, and, subsequent to attaining sixteen years of age, violates any order of the Superior Court or any condition of probation ordered by the Superior Court with respect to such delinquency proceeding . . . ."

We note that technical changes, not relevant to this appeal, were made to § 46b-120 in 2005. See Public Acts 2005, No. 05-250, § 1. Subsequently, more substantive changes were made in 2007; see Public Acts, Spec. Sess., June, 2007, No. 07-4, § 73; however, those changes go into effect on January 1, 2010. For purposes of clarity, references herein are to the 2007 revision of the statute.

[4] "The respondent admitted to using a motor vehicle without permission in violation of General Statutes § 53a-119b (a), violation of probation in violation of General Statutes § 46b-120 (6) (C) and violation of a court order for leaving a detention program without permission. Additional charges of violation of probation and a charge of criminal trespass in the first degree in violation of General Statutes § 53a-107 were nolled by the court." *In re William D.*, supra, 97 Conn. App. 602 n.1.

"On April 7, 2005, in light of the respondent's behavior, the [petitioner] moved for an extension of the respondent's commitment for twelve months pursuant to § 46b-141 (b). In support of the motion, the [petitioner] filed a social study detailing the respondent's circumstances. On April 26, 2005, the respondent filed an opposition to the motion for extension, claiming that the court lacked jurisdiction to extend his commitment because he was not a 'child' as defined in . . . § 46b-120 (1). The court held a hearing on the [petitioner's] motion on May 5, 2005. At this hearing, the respondent asked the court to take judicial notice of his age [then sixteen] and [of] the fact that there were no violations of probation or violations of a court order [the facts relevant to whether, at that time, the respondent was a 'child' as defined under § 46b-120 (1)]. The [petitioner] concurred in this request, noting that 'there aren't any violations because since he's committed, there's no probationary type orders.' In its May 9, 2005 memorandum of decision, the court rejected the respondent's claim and concluded that it had subject matter jurisdiction. The court further found that it was in the best interest of the respondent and the community to extend the respondent's commitment to the custody of the [petitioner]. The court then extended the respondent's commitment for an indeterminate period not to extend beyond May 14, 2006, when he would become eighteen years old."[5] Id., 602–603.

The respondent then appealed from the judgment of the trial court to the Appellate Court, which affirmed

[5] The Appellate Court noted that, because the respondent's commitment terminated on his eighteenth birthday, which occurred during the pendency of his appeal, the respondent no longer can obtain practical relief. *In re William D.*, supra, 97 Conn. App. 604. Thus, his appeal would be moot barring the application of an exception to that doctrine. The Appellate Court concluded, and we agree, that, pursuant to this court's reasoning in *In re Steven M.*, 264 Conn. 747, 755–56, 826 A.2d 156 (2003), the present appeal satisfies the three requirements for the " 'capable of repetition, yet evading review' " exception to the doctrine. *In re William D.*, supra, 604.

the judgment. Id., 602. The Appellate Court rejected the respondent's contention that the trial court's jurisdiction to extend delinquency commitments under § 46b-141 (b) was limited to persons who satisfied the definition of a "child" under § 46b-120 (1) at the time that the extension was sought. Id., 608. The Appellate Court reasoned that, because "[t]he relevant question . . . is whether under § 46b-141 (b) the initial commitment pursuant to § 46b-141 (a) should be extended," the two subsections must be read in harmony. Id. Because subsection (a) of § 46b-141 provides for "the commitment of children convicted as delinquent," meaning a person who was a "child" at the time of the initial commitment, the court concluded that "the motion for extension of the commitment must relate to a person who was a child at the time he or she first was adjudicated as a delinquent." Id. Accordingly, the Appellate Court held that the trial court had jurisdiction to extend the respondent's commitment. Id., 609. This certified appeal followed. See footnote 2 of this opinion.

The respondent advances several reasons why the Appellate Court's judgment should be reversed. He first contends that the Appellate Court ignored the legislature's express intent that the definition prescribed for "child" under § 46b-120 (1) apply throughout chapter 815t of the General Statutes, including § 46b-141 (b), and that the court contravened rules of statutory construction by, in effect, substituting the term "person" for "child." The respondent also points to the legislature's inclusion of a limited class of persons sixteen years of age and older in its definition of "child" as evidence that the legislature specifically chose not to include a broader class of all persons sixteen or older. He further contends that precluding the extension of delinquency commitments for persons who no longer are children (over the age of sixteen) is consistent with the general limits of the court's jurisdiction in delinquency matters

and with other statutes that provide remedies for troubled youth (those between the ages of sixteen and seventeen). Finally, he contends that, should this court deem § 46b-141 (b) to be ambiguous as to this question, we must construe it against the state because of the quasi-criminal nature of a delinquency commitment and the significant liberty interest at stake.

The petitioner responds that construing the term "child" in § 46b-141 (b) to refer to the status of the respondent at the time of the initial commitment is the only construction that is consistent with the language and rehabilitative purpose of the delinquency scheme as a whole. The petitioner contends that various inequities and inconsistencies would ensue if this court were to construe § 46b-141 (b) to limit the court's jurisdiction to persons who are children, as defined under § 46b-120, at the time of the pertinent proceeding subsequent to commitment. We agree with the petitioner.

This appeal raises a question of statutory construction. As such, we exercise de novo review under well settled principles. See *Pasquariello* v. *Stop & Shop Cos.*, 281 Conn. 656, 663, 916 A.2d 803 (2007).

We begin, as directed by General Statutes § 1-2z, with the relevant text. Section 46b-141 provides in relevant part: "(a) . . . [C]ommitment of children convicted as delinquent by the Superior Court to the Department of Children and Families shall be for (1) an indeterminate time up to a maximum of eighteen months . . . . (b) The Commissioner of Children and Families may file a motion for an extension of the commitment as provided in subdivision (1) of subsection (a) beyond the eighteen-month period on the grounds that such extension is for the *best interest of the child* or the community. . . ." (Emphasis added.)

Section 46b-120 (1) in turn provides the following pertinent definition: "[F]or purposes of delinquency

matters, 'child' means any person (A) under sixteen years of age, or (B) sixteen years of age or older who, prior to attaining sixteen years of age, has violated any federal or state law or municipal or local ordinance, other than an ordinance regulating behavior of a child in a family with service needs, and, subsequent to attaining sixteen years of age, violates any order of the Superior Court or any condition of probation ordered by the Superior Court with respect to such delinquency proceeding . . . ." Section 46b-120 (1) (B), in essence, addresses those persons who were subject to a delinquency proceeding before the age of sixteen and who, after attaining the age of sixteen, violate a court order. It is undisputed that at the time of the extension proceeding in the present case, the respondent did not fall within either definition of a "child."

Because, pursuant to § 46b-141 (b), the court undoubtedly considers the child's best interest *at the time the extension is sought*, the respondent contends that his status at that time is controlling. The respondent points to the "plain meaning rule" as dictating such a construction. Although we agree that the definition of "child" under § 46b-120 (1) could be applied literally to § 46b-141 (b) to support the respondent's construction, we eschew such a mechanistic application of the definition given the internal inconsistencies and consequences that would ensue in clear contravention of the broader purposes of the delinquency scheme.

We note at the outset that there is no one canon of statutory construction that trumps all others, as the respondent appears to suggest.[6] See *Small* v. *Going*

---

[6] As this court recently cautioned in *Small* v. *Going Forward, Inc.*, 281 Conn. 417, 425 n.4, 915 A.2d 298 (2007): "This case is yet another example of the canons' primary limitation, namely, that for almost every maxim found in the grab bag of canons, an equal and opposite proposition may be found. *Miller's Pond Co., LLC* v. *New London*, 273 Conn. 786, 811–12 n.25, 873 A.2d 965 (2005). Although the so-called canons of statutory construction may at times serve as useful tools in deciphering legislative meaning, to rely on any one of them as a compelling factor in the interpretive process

*Forward, Inc.*, 281 Conn. 417, 425 n.4, 915 A.2d 298 (2007). Indeed, § 1-2z expressly eschews such a myopic approach. In determining the meaning of a statute, this court's charge is to consider "the text of the statute itself and its relationship to other statutes." General Statutes § 1-2z. This dictate reflects the well established principle that "the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Renaissance Management Co.* v. *Connecticut Housing Finance Authority*, 281 Conn. 227, 238–39, 915 A.2d 290 (2007). Examination of the legislature's use of the term "child" in § 46b-141 and the delinquency scheme as a whole reveals the legislature's intent to view that term in the light of the status of the respondent at the time of the original delinquency proceeding.

Beginning with the provision at issue, we first note, as did the Appellate Court, that § 46b-141 (b) refers to the extension of a commitment provided for under subsection (a) of that statute. Thus, the statute incorporates by reference the person's status as a child at the original commitment proceeding. In addition, § 46b-141 (b) authorizes the court to grant a motion to extend commitment when it is in the best interest of the com-

is problematic, because . . . there are two opposing canons on almost every point. K. Llewellyn, 'Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed,' 3 Vand. L. Rev. 395, 401 (1950). The so-called canons are not that, at least in the sense that any one of them reliably can be determined to apply or not to apply in any given case. They are, instead, merely guides drawn from experience, to be employed or not to be employed carefully and judiciously, depending on the circumstances." (Internal quotation marks omitted.)

munity, and that determination has significance independent of whether extension also is the best interest of the child. See General Statutes § 46b-141 (b) (petitioner may move for extension "on the grounds that such extension is for the best interest of the child *or the community*" [emphasis added]); see also Public Acts 1995, No. 95-225, § 23 (adding best interest of community as ground for extension); *State* v. *Robert H.*, 273 Conn. 56, 65 n.8, 866 A.2d 1255 (2005) ("the use of the disjunctive 'or' between the two parts of the statute evinced a 'clear legislative intent of separability' "). There is no textual indication that the community interest determination either requires consideration of the person's age or precludes extension on the basis of age if extended commitment is in the best interest of the community. Indeed, the delinquency scheme as a whole reflects the twin goals of protecting the community and rehabilitating the juvenile by providing within the juvenile justice scheme a process to help those juveniles who can be rehabilitated and by addressing within the criminal justice system those juveniles who pose a significant risk to the community. See generally General Statutes § 46b-121h (setting forth goals of juvenile justice system); General Statutes § 46b-121i (prescribing responsibilities of judicial department in providing programs and services to juvenile justice system); General Statutes § 46b-121*l* (early intervention projects for juvenile offenders); see also *In re Jason C.*, 255 Conn. 565, 575–76 n.12, 767 A.2d 710 (2001) (stating in delinquency extension case that, "it is clear that § 46b-121h includes both rehabilitation and accountability as desired goals of the juvenile justice system").

We further note that § 46b-141 (b) mandates that the trial court hold a permanency hearing "[n]ot later than twelve months after a child is committed to the [petitioner] . . . . After the initial permanency hearing, subsequent permanency hearings shall be held not less

frequently than every twelve months while the child remains committed to the [petitioner]." Were we to adopt the respondent's temporal view of the term "child," the court would lack jurisdiction to conduct a permanency hearing upon the respondent attaining the age of sixteen. Thus, if a child between the ages of fifteen and sixteen were committed to the petitioner for a period in excess of twelve months, the court would be faced with two options: (1) conduct a permanency hearing a short time after the child is committed; see General Statutes § 46b-141 (d) (requiring petitioner to file permanency plan at least sixty days prior to hearing); or (2) lose jurisdiction to conduct the hearing upon the child's sixteenth birthday. Neither outcome, however, is consistent with the purpose of these provisions.

Significantly, permanency plans may include the goal of modification or revocation of commitment. See General Statutes § 46b-141 (c) and (d). Uniformly applied, the respondent's construction would preclude the court from exercising jurisdiction to modify or revoke commitment for persons over the age of sixteen, unless they fall into the limited class under § 46b-120 (1) (B). A similar result would ensue under General Statutes § 46b-140 (i) ("parent or guardian of the child or the child may petition the court for modification" of commitment of child to "residential facility operated by or under contract with" department of children and families). Such results clearly run counter to the goal of permanency plans, which are intended to advance the child's best interest and need for permanency. See General Statutes § 46b-141 (d). Indeed, as the petitioner pointed out at oral argument in this court, under the respondent's view, a child who has been committed to the petitioner would enter a sort of "legal limbo" to that child's prejudice during the period between his

sixteenth birthday and the termination of his commitment.

The effect of the respondent's construction on motions to extend commitments ordered pursuant to § 46b-141 (a) (2) also counsels against his view. Under that statute, the court may commit a child convicted as delinquent for a serious juvenile offense[7] up to a maximum of four years. The court thereafter may grant a motion by the petitioner to extend the commitment for an additional eighteen months if the extension is "for the best interest of the child or the community." General Statutes § 46b-141 (c). As a practical matter, in order for the court to extend a four year commitment under the respondent's temporal construction, the child would need to have been *under the age of twelve* when committed in order for the court to retain jurisdiction to extend commitment near the end of that four year period. It is highly unlikely that the legislature intended for the extension to apply only to the youngest of juvenile offenders.

Review of delinquency provisions outside of § 46b-141 clearly demonstrates that the term "child" cannot mean definitively a person who has the status of a child as defined under § 46b-120 (1) at the time of the pertinent proceeding. General Statutes § 46b-146 pro-

---

[7] A " 'serious juvenile offense' means (A) the violation of, including attempt or conspiracy to violate section 21a-277, 21a-278, 29-33, 29-34, 29-35, 53-21, 53-80a, 53-202b, 53-202c, 53-390 to 53-392, inclusive, 53a-54a to 53a-57, inclusive, 53a-59 to 53a-60c, inclusive, 53a-70 to 53a-71, inclusive, 53a-72b, 53a-86, 53a-92 to 53a-94a, inclusive, 53a-95, 53a-101, 53a-102a, 53a-103a or 53a-111 to 53a-113, inclusive, subdivision (1) of subsection (a) of section 53a-122, subdivision (3) of subsection (a) of section 53a-123, 53a-134, 53a-135, 53a-136a, 53a-166 or 53a-167c, subsection (a) of section 53a-174, or 53a-196a, 53a-211, 53a-212, 53a-216 or 53a-217b, by a child, or (B) running away, without just cause, from any secure placement other than home while referred as a delinquent child to the Court Support Services Division or committed as a delinquent child to the Commissioner of Children and Families for a serious juvenile offense . . . ." General Statutes § 46b-120 (12); see footnote 3 of this opinion.

vides a procedure for the erasure of police and court records for children found to be delinquent. That section provides in relevant part: "Whenever any child has been found delinquent . . . and has subsequently been discharged from the supervision of the Superior Court or from the custody of the Department of Children and Families or from the care of any other institution or agency to whom he has been committed by the court, such child, his parent or guardian, may file a petition with the Superior Court and, if such court finds that at least two years or, in the case of a child convicted as delinquent for the commission of a serious juvenile offense, four years have elapsed from the date of such discharge, that no subsequent juvenile proceeding has been instituted against such child, that such child has not been found guilty of a crime *and that such child has reached sixteen years of age within such period,* it shall order all police and court records pertaining to such child to be erased. . . ." (Emphasis added.) General Statutes § 46b-146.[8] Thus, under that section, the court cannot grant a petition for erasure unless the "child" is sixteen years or older. It is axiomatic that "we read each statute in a manner that will not thwart its intended purpose or lead to absurd results." (Internal quotation marks omitted.) *Cardenas* v. *Mixcus*, 264 Conn. 314, 322–23, 823 A.2d 321 (2003). The *only* way to effectuate this statute is to read "child" to mean a person who had the status of a "child," as defined under § 46b-120 (1), at the time of the original delinquency proceeding.

We are mindful that, in a different chapter that also addresses delinquency proceedings, the legislature has used the phrase "child or youth" in some provisions;

---

[8] Changes, not relevant to this appeal, have been made to § 46b-146 and become effective on January 1, 2010. See Public Acts, Spec. Sess., June, 2007, No. 07-4, § 80. References herein to § 46b-146 are to the 2007 revision.

see General Statutes § 17a-8;[9] General Statutes § 17a-12 (c);[10] and thus could have used a similar phrase in § 46b-141 (b) to state more clearly its intent to allow the court to extend commitments after a person attains the age of sixteen. Given the overwhelming contextual evidence that the legislature intended for the term "child" as used in § 46b-141 to have a retrospective meaning referring to the original delinquency proceedings, however, we are not persuaded by these isolated references. We also are not persuaded by the inclusion of a specific class of persons over the age of sixteen in the definition of "child" in § 46b-120 (1) (B). It is

[9] General Statutes § 17a-8 provides: "(a) All children and youths who are or have been committed to the custody of the Commissioner of Children and Families as delinquent shall remain in such custody until such custody expires or terminates as provided by order of the Superior Court. Any child or youth who while placed in an institution administered by the Department of Children and Families escapes from such institution or any child or youth who violates the terms or conditions of parole may be returned to actual custody. The request of the Commissioner of Children and Families, or the commissioner's designee, shall be sufficient warrant to authorize any officer of the Department of Children and Families or any officer authorized by law to serve criminal process within this state to return any such child or youth into actual custody; and any such officer, police officer or constable shall arrest and hold any such child or youth when so requested, without written warrant.

"(b) If the commissioner finds that a child or youth committed to his custody as delinquent who is fourteen years of age or older cannot benefit from continued school attendance and if he further finds that such person may benefit from part or full-time employment at some useful occupation, the commissioner may place him on vocational parole, under the supervision of an employee of the department. For the purposes of this section, the limitations of subsection (a) of section 31-23, on the employment of minors under the age of sixteen years, shall not apply for the duration of such vocational parole."

[10] General Statutes § 17a-12 (c) provides: "Notwithstanding the provisions of subsection (b) of this section, (1) any delinquent child, if a male, may be placed at any time in the Connecticut Juvenile Training School, and (2) the commissioner may transfer any child or youth committed to the commissioner to any institution, hospital or facility for mentally ill children under the commissioner's jurisdiction for a period not to exceed fifteen days if the need for such emergency treatment is certified by a psychiatrist licensed to practice medicine by the state."

evident that this definition was intended to address a different jurisdictional concern: keeping within the juvenile justice system those delinquent children who currently are not under an order of commitment and who have reoffended. See Public Acts 1998, No. 98-256, §§ 1 and 10 (respectively, adding definition for delinquent child for persons sixteen years of age or older, and confirming jurisdiction of Superior Court to "persons sixteen years of age and older who are under the supervision of a juvenile probation officer while on probation or a suspended commitment to the Department of Children and Families, for purposes of enforcing any court orders entered as part of such probation or suspended commitment").

Recognizing the harm that his construction would engender if uniformly applied throughout the delinquency scheme, the respondent posited at oral argument before this court that the trial court could exercise jurisdiction in some circumstances for persons sixteen years of age and older. Specifically, the respondent suggested that this court could construe the term "child" differently in the various provisions under the delinquency scheme in chapter 815t of the General Statutes on the basis of whether the result favors or disfavors the respondent. Alternatively, he suggested that we need not consider the meaning of "child" in any context other than the one specifically implicated in his case. The respondent provides the court with no authority for this novel rule of construction, however, and our case law dictates in favor of a uniform construction in the absence of a clear indication to the contrary. See *Renaissance Management Co.* v. *Connecticut Housing Finance Authority,* supra, 281 Conn. 238–39 ("[T]he legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the

same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." [Internal quotation marks omitted.]); *State* v. *Lutters*, 270 Conn. 198, 211, 853 A.2d 434 (2004) ("[i]t is a familiar principle of statutory construction that where the same words are used in a statute two or more times they will ordinarily be given the same meaning in each instance" [internal quotation marks omitted]); *Schiano* v. *Bliss Exterminating Co.*, 260 Conn. 21, 41, 792 A.2d 835 (2002) ("[o]rdinarily, 'where the legislature uses the same phrase it intends the same meaning' ").

Although not directed to the internal inconsistencies issue, the respondent does contend in his brief to this court that, "because liberty is at stake, statutes such as the one at issue here must be strictly construed against the state." We agree with the petitioner, however, that the respondent has conflated two distinct, albeit related, doctrines. We also conclude that this case does not present a circumstance in which either doctrine is implicated.

In support of his rule of construction, the respondent cites *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 820, 786 A.2d 1091 (2002). *Johnson* recognizes the rule of lenity, under which we strictly construe penal statutes against the state. Id. We need not consider whether an extension of a delinquency commitment should be treated as akin to a penal statute for these purposes, however, because a necessary predicate to the application of the rule of lenity is a conclusion that the statute is ambiguous, meaning that it yields more than one reasonable interpretation *after we have applied all of our tools of construction.* See *State* v. *Lutters*, supra, 270 Conn. 219 ("courts do not apply the rule of lenity unless a reasonable doubt persists about a statute's intended scope even after resort to the lan-

guage and structure, legislative history, and motivating policies of the statute" [internal quotation marks omitted]). In the present case, after applying our tools of construction, we cannot conclude that the respondent's interpretation is a reasonable alternative to the one proffered by the petitioner. Indeed, "[a]lthough we recognize the fundamental principle that criminal statutes are to be construed strictly, it is equally fundamental that the rule of strict construction does not require an interpretation which frustrates an evident legislative intent. . . . Moreover, there is a presumption that the legislature intends to accomplish a reasonable and rational result rather than a difficult and possibly bizarre one." (Internal quotation marks omitted.) *State* v. *Burns*, 236 Conn. 18, 26–27, 670 A.2d 851 (1996).

In addition, the respondent points to cases in which Connecticut appellate courts and the United States Supreme Court have construed commitment statutes against the state to protect due process concerns, i.e., fundamental fairness. See, e.g., *In re Jason C.*, supra, 255 Conn. 575–76 (due process requires trial court to make advisement at time of plea that extension of commitment is possible), citing *In re Gault*, 387 U.S. 1, 27–28, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967). In the present case, it is undisputed that the respondent expressly was informed during his initial commitment proceeding that his term of commitment could be extended. Accordingly, the respondent does not claim that his right to due process was violated by the extension of his commitment. Thus, we need not construe the statute to remedy defective notice or process.

In sum, the delinquency scheme manifestly demonstrates that the term "child" in § 46b-141 (b) refers to the respondent's status at the time of the initial delinquency proceeding under § 46b-141 (a).

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

ZARELLA, J., concurring. I concur in the reasoning and the result that the majority reaches. I do not agree, however, with the majority's reliance on this court's statement in *State* v. *Lutters*, 270 Conn. 198, 853 A.2d 434 (2004), that "courts do not apply the rule of lenity unless a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, *legislative history*, and motivating policies of the statute." (Emphasis in original; internal quotation marks omitted.) Id., 219. For all of the reasons that I expressed in my concurrence in *Lutters*; id., 221–24 (*Zarella, J.*, concurring); I do not believe that it is appropriate to resort to the legislative history of a criminal statute to resolve ambiguities prior to applying the rule of lenity. Nevertheless, because the majority resolves any ambiguity in General Statutes § 46b-141 (b) without resorting to the legislative history, I concur in its reasoning and the result that it reaches.