# LORI DIAS ET AL. *v.* STEVEN GRADY ET AL.
## (SC 18265)

Rogers, C. J., and Norcott, Palmer, Vertefeuille and McLachlan, Js.

Argued March 16—officially released July 7, 2009

*Lorinda S. Coon*, with whom, on the brief, was *William J. Scully* for the appellants (defendants).

*Matthew Shafner* for the appellees (plaintiffs).

*Joram Hirsch* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

ROGERS, C. J. The plaintiffs, Lori Dias and John Dias,[1] brought this medical malpractice action against the defendants, Steven Grady, an obstetrician and gynecologist, and Connecticut Women's Obstetrics and Gynecology, LLC, alleging that Grady negligently had performed a laparoscopic hysterectomy on Dias. Pursuant to General Statutes § 52-190a,[2] the plaintiffs

---

[1] We refer to Lori Dias and John Dias collectively as the plaintiffs and to Lori Dias individually as Dias.

[2] General Statutes § 52-190a (a) provides: "No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney, and any apportionment complainant or apportionment complainant's attorney, shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. The similar health care provider who provides such written opinion shall not, without a showing of malice, be personally liable

attached to their complaint the written opinion of a surgeon that Grady had violated the standard of care when he performed the surgery. The defendants then filed a motion to dismiss the complaint on the ground that the written opinion did not state that Grady's deviation from the standard of care was the proximate cause of Dias' injuries. The trial court concluded that § 52-190a does not require plaintiffs in medical malpractice actions to attach an opinion addressing causation and denied the defendants' motion. This appeal followed.[3] We affirm the judgment of the trial court.

In their complaint, the plaintiffs alleged the following facts, the truth of which we assume for purposes of this appeal. Dias made arrangements with Grady to perform a laparoscopic hysterectomy on December 14, 2005. The surgery was postponed to January 6, 2006, after Grady suffered an injury to his right hand. Dias was discharged from the hospital on January 7, 2006. Two days later, Dias developed abdominal pain, a high

for any damages to the defendant health care provider by reason of having provided such written opinion. In addition to such written opinion, the court may consider other factors with regard to the existence of good faith. If the court determines, after the completion of discovery, that such certificate was not made in good faith and that no justiciable issue was presented against a health care provider that fully cooperated in providing informal discovery, the court upon motion or upon its own initiative shall impose upon the person who signed such certificate or a represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee. The court may also submit the matter to the appropriate authority for disciplinary review of the attorney if the claimant's attorney or the apportionment complainant's attorney submitted the certificate."

[3] Chief Justice Rogers granted the defendants' petition for certification to appeal pursuant to General Statutes § 52-265a, which "allows the chief justice to certify a direct appeal to the Supreme Court from an interlocutory order of the Superior Court on an issue of law that involves a matter of substantial public interest and in which delay may work a substantial injustice." (Internal quotation marks omitted.) *Packer* v. *Board of Education*, 246 Conn. 89, 97, 717 A.2d 117 (1998).

fever, "rigors" and difficulty swallowing, and she went to the emergency room of Manchester Memorial Hospital. Dias was admitted to the hospital and was treated with antibiotics and intravenous hydration. Ultimately, she was diagnosed with a pelvic abscess caused by a bowel perforation. She was discharged from the hospital on February 3, 2006.

Thereafter, the plaintiffs filed a complaint alleging that Grady had committed medical malpractice by performing the surgery when he had limited use of his right hand as the result of an injury, and by using surgical instruments that were the wrong size. Pursuant to § 52-190a, the plaintiffs attached to their complaint a written opinion by a surgeon stating that, "[a]ccording to . . . Dias' family, after the surgery . . . Grady spoke to them and indicated that he had to do a great deal of the surgery with his left hand and that the instruments which he used were designed for a medium-size patient and that [Dias] was on the small side." He further stated that, in his opinion, if these statements were true, Grady had "deviated from the accepted standard of care . . . ."

The defendants then filed a motion to dismiss the complaint on the ground that the "written opinion [did] not express any opinion as to whether the perceived deviations from the standard of care actually caused [Dias'] claimed damages." After a hearing, the trial court concluded that § 52-190a requires only that a plaintiff provide a written opinion from a similar health care provider that the defendant had breached the standard of care, and does not require an opinion that the breach had caused the plaintiff's injuries. Accordingly, the trial court concluded that the plaintiffs complied with the statute and it denied the defendants' motion to dismiss.

On appeal, the defendants contend that, because § 52-190a requires plaintiffs to provide a written opinion of

a similar health care provider that there appears to be evidence of medical negligence, and because proof of proximate cause is an element of medical negligence,[4] the statute clearly and unambiguously provides that the written opinion must state that the defendant's breach of the standard of care caused the plaintiff's injuries. The plaintiffs counter that the phrase "medical negligence" as used in § 52-190a (a) does not include the element of causation, but means "the failure to use that degree of care for the protection of another that the ordinarily reasonably careful and prudent [person] would use under like circumstances. . . . It signifies a want of care in the performance of an act, by one having no positive intention to injure the person complaining of it."[5] (Citations omitted; internal quotation marks omitted.) *Brown* v. *Branford*, 12 Conn. App. 106, 108, 529 A.2d 743 (1987). We agree with the plaintiffs.

The meaning of § 52-190a is a question of law over which our review is plenary. *State* v. *Peters*, 287 Conn. 82, 87, 946 A.2d 1231 (2008). When this court interprets a statute, "General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or

---

[4] See *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994) ("[t]he essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury").

[5] This court granted the application of the Connecticut Trial Lawyers Association (association) for permission to appear as an amicus curiae. The association filed a brief in which it argued that § 52-190a (a) does not require that the written opinion of the similar health care provider include an opinion that the alleged medical malpractice was the proximate cause of Dias' injuries. The association also argued that, if this court were to conclude that the statute does require an opinion regarding causation, then the court should remand the case to the trial court for a determination as to whether the complaint should be dismissed. Because we conclude that § 52-190a (a) does not require the written opinion to address causation, we need not address the latter argument.

unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Cashman,* 283 Conn. 644, 650–51, 931 A.2d 142 (2007).

We begin our analysis with the language of the statute. Section 52-190a (a) provides in relevant part that, in any medical malpractice action, "the claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider, as defined in [General Statutes §] 52-184c,[6] which similar

[6] General Statutes § 52-184c provides: "(a) In any civil action to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in section 52-184b, the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

"(b) If the defendant health care provider is not certified by the appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist, a 'similar health care provider' is one who: (1) Is licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications; and (2) is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim.

"(c) If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if

health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . ." Section 52-190a (a) does not define medical negligence and the phrase is susceptible to more than one reasonable interpretation. Specifically, the word "negligence" reasonably may be understood, as the defendants claim, as referring to the cause of action consisting of the elements of duty, breach of the standard of care, causation and damages; see footnote 4 of this opinion; or it reasonably may be understood, as the plaintiffs claim, as specifying an attribute of the defendant's conduct, namely, "a want of care in the performance of an act, by one having no positive intention to injure the person complaining of it." (Internal quotation marks omitted.) *Brown* v. *Branford*, supra, 12 Conn. App. 108. We conclude, therefore, that the phrase is ambiguous. Accordingly, we may "look for interpretive guidance to the legislative history and circumstances surrounding [the statute's] enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Cashman*, supra, 283 Conn. 651.

---

the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'.

"(d) Any health care provider may testify as an expert in any action if he: (1) Is a 'similar health care provider' pursuant to subsection (b) or (c) of this section; or (2) is not a similar health care provider pursuant to subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim."

Section 52-190a originally was enacted as part of the Tort Reform Act of 1986. See Public Acts 1986, No. 86-338, § 12. The original version of the statute required the plaintiff in any medical malpractice action to conduct "a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the [plaintiff]" and to file a certificate "that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant." General Statutes (Rev. to 1987) § 52-190a (a). The original statute did not require the plaintiff to obtain the written opinion of a similar health care provider that there appeared to be evidence of medical negligence, but permitted the plaintiff to rely on such an opinion to support his good faith belief. The parties in the present case agree that the purpose of the original version of § 52-190a was to prevent frivolous medical malpractice actions. See *Bruttomesso* v. *Northeastern Connecticut Sexual Assault Crisis Services, Inc.*, 242 Conn. 1, 15, 698 A.2d 795 (1997) ("[t]he purpose of the legislation is to inhibit a plaintiff from bringing an inadequately investigated cause of action, whether in tort or in contract, claiming negligence by a health care provider").

In 2005, the legislature amended § 52-190a (a) to include a provision requiring the plaintiff in a medical malpractice action to obtain the written opinion of a similar health care provider that "there appears to be evidence of medical negligence" and to attach the opinion to the certificate of good faith to be filed with the complaint. See Public Acts 2005, No. 05-275, § 2 (a) (P.A. 05-275). In addition, the amendment provided that the failure to file the written opinion would be grounds for dismissal of the complaint. See P.A. 05-275, § 2 (c), now codified as General Statutes § 52-190a (c). The legislative history of this amendment indicates that it

was intended to address the problem that some attorneys, either intentionally or innocently, were misrepresenting in the certificate of good faith the information that they had obtained from experts. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 18, 2005 Sess., p. 5553, testimony of Michael D. Neubert.[7]

[7] Neubert, an attorney testifying on behalf of the Connecticut State Medical Society, stated that the amendment was intended to "ensure that there's a reasonable basis for filing a medical malpractice action under the circumstances. It would help eliminate some of the more questionable and meritless claims filed under the present statutory scheme." Conn. Joint Standing Committee Hearings, supra, p. 5539. He also stated that the amendment was targeting "[t]hose cases where attorneys, based on their own judgment and maybe in good faith have misread what an [expert has] told them . . . . Very often you hear what you want to hear as an attorney, or interpret [what has] been told to you as you want to interpret it. . . . [I]f the [physician is] not willing to sign on the dotted line, maybe [that is] a good indication that this [is not] a good case to bring. . . . If part of what [we are] trying to do here is eliminate those cases which should not be in the system then I think this serves to do it." Id., p. 5553; see also Conn. Joint Standing Committee Hearings, Judiciary, Pt. 19, 2005 Sess., p. 5743, written testimony of Neubert ("the present statutory scheme does not adequately insure that an attorney filing a medical malpractice action has a reasonable basis to believe that the defendants have violated the standard of care in causing the plaintiff injury"). Jonathan G. Greenwald, a physician and a member of the Connecticut State Medical Society, submitted written testimony in which he stated that the new requirement for a written opinion of a similar health care provider was not "effective reform, because, with a relatively minimal effort, a plaintiff's attorney can still find a single voice out there in the void who will back the case." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 19, 2005 Sess., p. 5768. Greenwald also noted in his written testimony concerning the amendment to § 52-190a (a) that another bill concerning medical malpractice reform contained the word negligence but not the word causation, and he pointed out that "both are critical elements in a malpractice case." Id., p. 5772.

This court repeatedly has recognized that testimony before legislative committees regarding proposed legislation sheds light on "the problem or issue that the legislature sought to resolve, and the purpose it sought to serve, in enacting a statute." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 240 Conn. 317, 337, 692 A.2d 713 (1997).

The defendants contend that the legislative history of the 2005 amendment to § 52-190a (a) supports their position. They point out that an early version of the bill that ultimately was enacted as P.A. 05-275, § 2 (a), required a plaintiff in a medical malpractice action to obtain the written opinion of a similar health care provider "that there are grounds for a good faith belief

With this background in mind, we conclude that the phrase "medical negligence," as used in § 52-190a (a), means breach of the standard of care and was not intended to encompass all of the elements of a cause of action for negligence. Section 52-190a (a) requires that the plaintiff obtain the written opinion of *a similar health care provider*, as defined in § 52-184c. Although a similar health care provider would be qualified to provide an opinion regarding the applicable standard of care, there are many situations in which a similar health care provider would not be qualified to express an opinion as to causation.[8] Moreover, there is no statutory mechanism by which a plaintiff can introduce the written opinion of a nonsimilar health care provider regarding causation. Accordingly, a requirement that the plaintiff attach a written opinion of a similar health care provider that there appears to be evidence of proximate causation would, in many cases, be an insurmountable obstacle to bringing an action. Although the language and history of § 52-190a (a) indicate that the statute was intended to bar meritless medical malpractice actions, we see no evidence that the legislature intended to bar meritorious claims merely because a similar health care provider is not qualified to provide

that there has been negligence in the care or treatment of the claimant *and that the claimant has been injured by such negligence*." (Emphasis added.) Senate Bill No. 1052, 2005 Sess. The defendants contend that "[t]he use of the term 'medical negligence' [in the version of the bill that was ultimately adopted] is an appropriate shorthand for both breach of the standard of care and causation." We think that the General Assembly's failure to enact the early version of the bill could just as reasonably be understood, however, as evincing an intent to *reject* the proposed requirement that the plaintiff obtain a written opinion regarding causation. Accordingly, we reject this claim.

[8] For example, in cases in which the plaintiff has alleged a delayed diagnosis, a similar health care provider would be qualified to provide an opinion as to whether there appears to be evidence that the defendant's failure to diagnose the illness breached the standard of care, but might not be qualified to provide an opinion as to whether the delay in diagnosis affected the patient's prognosis.

an opinion as to both the applicable standard of care and proximate causation.[9] In the absence of any such evidence, we must presume that the legislature had no such intent. Cf. *Viera* v. *Cohen*, 283 Conn. 412, 427, 927 A.2d 843 (2007) ("[a]lthough the legislature may eliminate a common law right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed" [internal quotation marks omitted]).

In support of their claim to the contrary, the defendants contend that, if the legislature had intended to require a plaintiff to obtain a written opinion from a similar health care provider regarding only the standard of care, and not causation, the legislature would have expressly referred to the standard of care, as it did in § 52-184c (a). See General Statutes § 52-184c (a) ("the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider"); see also, e.g., *M. DeMatteo Construction Co.* v. *New London*, 236 Conn. 710, 717, 674 A.2d 845 (1996) (when "a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omitted]). We recog-

---

[9] Indeed, during the floor debate in the House of Representatives on the 2005 amendment to § 52-190a (a), Representative Michael Lawlor was asked "is it usually the case that the expert who provides the initial opinion will be the expert [who is] used at trial?" 48 H.R. Proc., Pt. 31, 2005 Sess., p. 9503. Representative Lawlor responded that that would be the case "more often than not," but also acknowledged that "[s]ometimes [there is] more than one expert retained by the plaintiffs." Id., pp. 9503–9504. Thus, Representative Lawlor expressly acknowledged that the written opinion of a similar health care provider would not necessarily be sufficient to support all of the elements of a negligence cause of action.

nize that, ordinarily, "when the legislature uses different language, the legislature intends a different meaning . . . ." *State* v. *Moore*, 98 Conn. App. 85, 92, 908 A.2d 568, cert. denied, 280 Conn. 944, 912 A.2d 477 (2006). We also have recognized, however, that "those who promulgate statutes . . . do not intend to promulgate statutes . . . that lead to absurd consequences or bizarre results." (Internal quotation marks omitted.) *State* v. *Harrison*, 228 Conn. 758, 765, 638 A.2d 601 (1994). As we have explained, requiring a similar health care provider to give an opinion as to causation at the prediscovery stage of litigation pursuant to § 52-190a when a similar health care provider is not required to give such an opinion at trial pursuant to § 52-184c would bar some plaintiffs who could prevail at trial from even filing a complaint. Because this would be a bizarre result, we reject this claim.

The defendants also contend that, under the principle that "the legislature is always presumed to have created a harmonious and consistent body of law"; (internal quotation marks omitted) *In re William D.*, 284 Conn. 305, 313, 933 A.2d 1147 (2007); the phrase "medical negligence" as used in § 52-190a (a) must be construed to have the same meaning as the word "injury" as used in General Statutes § 52-584.[10] They point out that, in *Lagassey* v. *State*, 268 Conn. 723, 748–49, 846 A.2d 831 (2004), this court stated that "the term injury is synonymous with legal injury or actionable harm. Actionable

---

[10] General Statutes § 52-584 provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

harm occurs when the plaintiff discovers, or in the exercise of reasonable care, should have discovered the essential elements of a cause of action. . . . A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence; they are therefore necessary ingredients for actionable harm." (Citation omitted; internal quotation marks omitted.) We also stated in *Lagassey* that "[i]nterpreting the word injury to require some evidence of a causal connection between the harm complained of and the defendant's alleged negligence is consistent with the state's tort reform legislation regarding medical malpractice actions. See, e.g., General Statutes § 52-184c (a) (requiring plaintiff to establish prevailing professional standard of care); General Statutes § 52-190a (requiring plaintiff to file certificate of good faith but allowing ninety day extension of limitation period) . . . ." (Citations omitted; internal quotation marks omitted.) *Lagassey* v. *State*, supra, 747 n.17.

The defendants in the present case contend that, because, under § 52-584, "actionable harm does not occur until the plaintiff discovers or should have discovered that the harm complained of *was caused by the negligence of the defendant*"; (emphasis in original) id., 747; the legislature must have intended to require that, before bringing a medical malpractice action, the plaintiff must obtain the written opinion of a similar health care provider stating that there appears to be evidence that the defendant's conduct caused the plaintiff's injuries. We are not persuaded. We recognize that a plaintiff must have "a good faith belief that grounds exist for an action against each named defendant" in order to bring a medical malpractice action; see General Statutes § 52-190a (a); and that this requirement applies to the

element of causation.[11] For the reasons that we have stated, however, we do not believe that that good faith belief certified by the attorney in the certificate of good faith must be based solely on the written opinion of the similar health care provider. Rather, the plaintiff's good faith belief regarding causation may be based on consultation with nonsimilar health care providers or on other reasonable grounds.[12] See General Statutes § 52-190a (a) ("[i]n addition to such written opinion, the court may consider other factors with regard to the existence of good faith"); *LeConche* v. *Elligers*, 215 Conn. 701, 708, 579 A.2d 1 (1990) ("[t]he existence of a report by a medical expert may be, but is not necessarily, sufficient to establish the plaintiffs' good faith belief" under § 52-190a [a]);[13] *LeConche* v. *Elligers*,

[11] Indeed, at oral argument before this court, the plaintiffs conceded that if a plaintiff or counsel for the plaintiff did not have a good faith belief, based either on consultation with a nonsimilar health care provider or other reasonable grounds, that the defendant's conduct caused the plaintiff's injuries, the plaintiff could be subject to sanctions under § 52-190a (a). See General Statutes § 52-190a (a) ("[i]f the court determines, after the completion of discovery, that such certificate was not made in good faith and that no justiciable issue was presented against a health care provider that fully cooperated in providing informal discovery, the court upon motion or upon its own initiative shall impose upon the person who signed such certificate or a represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee").

[12] Of course, § 52-190a (a) does not *prohibit* the similar health care provider from expressing an opinion as to proximate cause in the written statement if he is qualified to do so, and any such opinion could support a finding that the plaintiff had a good faith belief that grounds exist for an action against the defendant. Conversely, if a similar health care provider who is qualified and has all of the information required to provide an opinion on causation fails to do so, that failure could, under certain circumstances, support a finding that the plaintiff lacked a good faith belief that the defendant's conduct caused the alleged injuries.

[13] As we have indicated, § 52-190a (a) was amended after this court's decision in *LeConche* to require plaintiffs to obtain the written opinion of a similar health care provider and to attach the opinion to the complaint. Although the original version of the statute did not require a plaintiff to obtain or to attach such an opinion, it did permit a plaintiff to rely on a

supra, 708–709 (under § 52-190a [a], trial court must conduct factual inquiry into plaintiffs' good faith and plaintiffs may rely on information beyond written expert opinion).

The judgment is affirmed.

In this opinion the other justices concurred.

written opinion to show the existence of good faith. See General Statutes (Rev. to 1987) § 52-190a (a). Both versions of the statute provide that the written opinion contain a statement "that there appears to be evidence of medical negligence." We see no evidence that, by enacting P.A. 05-175, § 2, the legislature intended to change the substantive requirements of the written opinion so that, in all cases, it would be sufficient to support a finding of good faith.