KRISTY WILCOX ET AL. *v.* DANIEL S.
SCHWARTZ ET AL.
(SC 18607)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan,
Eveleigh and Vertefeuille, Js.

---

Argued March 17, 2011—officially released February 7, 2012

*Frank H. Santoro*, with whom, on the brief, was *Jonathan A. Kocienda*, for the appellants (defendants).

*Steven J. Errante*, with whom, on the brief, was *Marisa A. Bellair*, for the appellees (plaintiffs).

*Opinion*

PALMER, J. This certified appeal arises out of a medical malpractice action brought by the plaintiffs, Kristy Wilcox and Timothy Wilcox,[1] against the defendants, Daniel S. Schwartz, a general surgeon, and his employer, CBS Surgical Group, P.C., alleging that Schwartz negligently performed laparoscopic gallbladder surgery on Kristy Wilcox (Wilcox). The trial court granted the defendants' motion to dismiss, concluding that the written opinion of a "similar health care provider" that accompanied the certificate of good faith, as mandated by General Statutes § 52-190a (a),[2] did not satisfy the

---

[1] We refer to Kristy Wilcox and Timothy Wilcox collectively as the plaintiffs.

[2] General Statutes § 52-190a provides in relevant part: "(a) No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section,

"detailed basis" requirement of § 52-190a (a) because it failed to explain the particular manner in which Schwartz had breached the standard of care. The plaintiffs appealed to the Appellate Court, which reversed the judgment of the trial court. *Wilcox* v. *Schwartz*, 119 Conn. App. 808, 817, 990 A.2d 366 (2010). We granted the defendants' petition for certification to appeal limited to the following question: "Did the Appellate Court properly reverse the trial court's dismissal of the present case for failure to comply with the 'detailed basis' requirement of . . . § 52-190a (a)?" *Wilcox* v. *Schwartz*, 296 Conn. 908, 909, 993 A.2d 469 (2010). We answer that question in the affirmative and, accordingly, affirm the judgment of the Appellate Court.[3]

that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney, and any apportionment complainant or apportionment complainant's attorney, shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. The similar health care provider who provides such written opinion shall not, without a showing of malice, be personally liable for any damages to the defendant health care provider by reason of having provided such written opinion. In addition to such written opinion, the court may consider other factors with regard to the existence of good faith. If the court determines, after the completion of discovery, that such certificate was not made in good faith and that no justiciable issue was presented against a health care provider that fully cooperated in providing informal discovery, the court upon motion or upon its own initiative shall impose upon the person who signed such certificate or a represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee. The court may also submit the matter to the appropriate authority for disciplinary review of the attorney if the claimant's attorney or the apportionment complainant's attorney submitted the certificate.

\* \* \*

"(c) The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

[3] Because we conclude that the written opinion attached to the complaint in accordance with § 52-190a (a) was sufficiently detailed to satisfy the requirements of that statutory provision, we do not reach the defendants'

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "The [plaintiffs] alleged that on March 12, 2006, Wilcox underwent a laparoscopic cholecystectomy performed by Schwartz for treatment of gallbladder disease. The [plaintiffs] further alleged that Schwartz performed the procedure negligently, causing Wilcox to suffer 'severe, painful and permanent injuries.' The plaintiffs claimed that Schwartz breached the applicable standard of care in that he . . . (1) 'failed to [ensure] the adequate and accurate identification of [Wilcox's] internal anatomy prior to proceeding with the laparoscopic cholecystectomy,' (2) 'failed to prevent injury to [Wilcox's] biliary structures during the laparoscopic cholecystectomy' and (3) 'failed to accurately document the surgical procedure . . . .' " *Wilcox* v. *Schwartz*, supra, 119 Conn. App. 810–11.

"The [plaintiffs'] two count complaint stated claims sounding in medical negligence and loss of spousal consortium, respectively. Attached to the complaint was a certificate of reasonable inquiry, executed by the plaintiffs' attorney, and a written and signed medical opinion [by a physician]. The body of the opinion [provides in relevant part]: 'I have reviewed the relevant records and information that were provided to me with regard to . . . Wilcox.

" 'I can conclude that, to a reasonable degree of medical probability, there are deviations from the applicable standards of care pertaining to the care and treatment of . . . Wilcox provided by [Schwartz] and that the care and treatment provided by [him] was not provided in a manner consistent with the standards of care that existed among general surgeons at the time of the alleged incident.

second claim, namely, that § 52-190a (c) requires dismissal of a complaint when the opinion is insufficiently detailed. See footnote 2 of this opinion.

" 'Specifically [Schwartz] failed to prevent injury to . . . Wilcox's biliary structures during laparoscopic [gallbladder] surgery and failed to accurately document the surgical procedure of March 12, 2006. As a result of [Schwartz'] negligent treatment . . . Wilcox sustained severe, painful and permanent injuries.

" 'My opinions are based [on] my education, training and experience as a physician, and my examination of . . . Wilcox's medical records.' " Id., 811–12.

"[T]he defendants filed a motion to dismiss the complaint . . . [on the ground] that the plaintiffs' written opinion was not detailed enough to satisfy the requirements of § 52-190a (a). Specifically, the defendants argued that 'the opining physician simply provides a conclusory statement of negligence, and fail[ed] to provide an opinion as to *how* [Schwartz was] negligent in [his] care of [Wilcox], [that is], *how* [Schwartz] deviated from the standard of care.' " (Emphasis in original.) Id., 812. The trial court granted the defendants' motion to dismiss; see General Statutes § 52-190a (c);[4] concluding that the "detailed basis" requirement of § 52-190a (a) requires a written opinion to include "some particulars as to what the defendant did that he was not supposed to do or failed to do that he was supposed to do." In its view, although the written opinion submitted by the plaintiffs in the present case asserts that Schwartz "was supposed to do something 'to prevent injury to . . . Wilcox's biliary structures' . . . [that] he did not," it failed to identify the negligent act or omission with sufficient particularity to satisfy the requirements of § 52-190a (a).

On appeal to the Appellate Court, the plaintiffs claimed that the trial court incorrectly had concluded that the written opinion was insufficiently detailed to meet the requirements of § 52-190a. See *Wilcox* v.

[4] See footnote 2 of this opinion.

*Schwartz,* supra, 119 Conn. App. 810. The Appellate Court agreed with that claim and reversed the judgment of the trial court. Id., 810, 817. In reaching its determination, the Appellate Court relied on this court's decision in *Dias* v. *Grady,* 292 Conn. 350, 359–60, 972 A.2d 715 (2009), in which we rejected a claim that the written opinion required by § 52-190a (a) must state that the defendant's deviation from the standard of care was the proximate cause of the plaintiff's injuries. See *Wilcox* v. *Schwartz,* supra, 814–15. In *Dias,* we concluded, rather, on the basis of our examination of the language and legislative history of § 52-190a, that the written opinion need only provide an opinion as to the breach of the standard of care. See *Dias* v. *Grady,* supra, 355–60. Because the written opinion in the present case satisfied that requirement, the Appellate Court concluded that it was sufficient for purposes of § 52-190a (a). See *Wilcox* v. *Schwartz,* supra, 815. Specifically, the Appellate Court stated: "The [written] opinion first states the author's conclusion, 'to a reasonable degree of medical probability,' that there were 'deviations from the applicable [standard] of care' by Schwartz and that the care and treatment provided to Wilcox by Schwartz 'was not provided in a manner consistent with the [standard] of care that existed among general surgeons at the time of the alleged incident.' The opinion continues: 'Specifically, [Schwartz] failed to prevent injury to . . . Wilcox's biliary structures during laparoscopic [gallbladder] surgery and failed to accurately document the surgical procedure of March 12, 2006.' Thus, the structure of the [written opinion] reveals the author's statement of the prevailing standard of care: protecting the biliary structures during laparoscopic gallbladder surgery. It is this standard of care, the author opines, that Schwartz breached in performing the surgery on Wilcox." Id.

The Appellate Court concluded that "the [written] opinion [was] sufficiently detailed to satisfy the require-

ments of § 52-190a (a). It suffices to notify the reader that a similar health care provider is of the opinion that the medical negligence consisted of a failure to protect Wilcox's bile ducts from injury during surgery. . . . The ultimate purpose of [the] requirement [of a written opinion] is to [discourage frivolous lawsuits by] demonstrat[ing] the existence of the claimant's good faith in bringing the complaint by having a witness, qualified under General Statutes § 52-184c, state in written form that there appears to be evidence of a breach of the applicable standard of care. [As] long as the good faith opinion sufficiently addresses the allegations of negligence pleaded in the complaint, as [the written] opinion [in the present case] does, the basis of the opinion is detailed enough to satisfy the statute and the statute's purpose." (Citation omitted.) Id., 815–16. The Appellate Court further concluded that the plaintiffs' "complaint allege[d] only one specification of negligence pertaining to the actual performance of the surgery: that Schwartz 'failed to prevent injury to [Wilcox's] biliary structures during the laparoscopic cholecystectomy.' The defendants have been given sufficient notice that a similar health care provider is willing to state his opinion that the standard of care was breached during this surgical procedure. The defendants will have the opportunity to gather more information during discovery of any medical expert [that] the plaintiffs plan to use at trial." Id., 817. This appeal followed.

On appeal to this court following our granting of certification, the defendants challenge the determination of the Appellate Court that the plaintiffs' written opinion contains sufficient detail to pass muster under § 52-190a (a) on the ground that the opinion fails to identify the particular negligent act or acts that caused the damage to Wilcox's biliary structures. The defendants also assert that the written opinion is legally inadequate because it asserts only that Schwartz was

negligent in failing to prevent injury to Wilcox's biliary structures but does not expressly identify the standard of care. The defendants' contention concerning the scope of the written opinion requirement of § 52-190a (a) is predicated on their claim that the requirement was intended, first, to make medical "malpractice cases more difficult to file" and, second, to " 'narrow down' the basis of a plaintiff's claim" in the interest of expediting an ultimate resolution of the action.

The plaintiffs maintain that the Appellate Court correctly concluded that the purpose of the written opinion requirement is to discourage frivolous medical malpractice actions by placing the burden on the person bringing the action to identify a qualified medical professional who is willing to attest to the fact that there appears to be evidence of medical negligence as alleged in the complaint. The plaintiffs further contend that interpreting § 52-190a (a) to require that a written opinion provide an explanation of the precise manner in which the defendant was negligent prior to any discovery in the case would lead to the untenable result that many potentially meritorious claims never would be commenced. In accordance with their view of the meaning of § 52-190a (a), the plaintiffs maintain that the Appellate Court properly reversed the judgment of the trial court because the assertion in the written opinion that Schwartz negligently failed to protect Wilcox's biliary structures is all that was necessary to satisfy § 52-190a (a). We agree with the plaintiffs.

The question of whether the statements contained in the written opinion satisfy the "detailed basis" requirement of § 52-190a (a) is one of statutory construction.[5]

---

[5] "Statutory interpretation presents a question of law, over which we exercise plenary review. . . . The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . .

See, e.g., *Connecticut Ins. Guaranty Assn.* v. *State*, 278 Conn. 77, 82, 896 A.2d 747 (2006) (application of particular statutory provision to undisputed facts gives rise to issue of statutory construction). We therefore begin our analysis with the language of the statute, which provides in relevant part: "No [medical malpractice] action . . . shall be filed . . . unless the . . . party filing the action . . . has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint . . . shall contain a certificate of the . . . party filing the action . . . that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant . . . . To show the existence of such good faith, the claimant . . . shall obtain a written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . ." General Statutes § 52-190a (a). Because this language offers no specific guidance with respect to the level of detail that a written opinion must contain, we look to extratextual sources to ascertain the meaning of the "detailed basis" requirement of the statute, as applied to the facts of the present case.

In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities ex rel. Arnold* v. *Forvil*, 302 Conn. 263, 273, 25 A.3d 632 (2011).

As we explained in *Dias* v. *Grady*, supra, 292 Conn. 350, "[§] 52-190a originally was enacted as part of the Tort Reform Act of 1986. See Public Acts 1986, No. 86-338, § 12. The original version of the statute required the plaintiff in any medical malpractice action to conduct 'a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the [plaintiff]' and to file a certificate 'that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant.' General Statutes (Rev. to 1987) § 52-190a (a). The original statute did not require the plaintiff to obtain the written opinion of a similar health care provider that there appeared to be evidence of medical negligence . . . but permitted the plaintiff to rely on such an opinion to support his good faith belief. . . . [T]he purpose of the original version of § 52-190a was to prevent frivolous medical malpractice actions. See *Bruttomesso* v. *Northeastern Connecticut Sexual Assault Crisis Services, Inc.*, 242 Conn. 1, 15, 698 A.2d 795 (1997) ('[t]he purpose of the legislation is to inhibit a plaintiff from bringing an inadequately investigated cause of action, whether in tort or in contract, claiming negligence by a health care provider').

"In 2005, the legislature amended § 52-190a (a) to include a provision requiring the plaintiff in a medical malpractice action to ['show the existence of the claimant's good faith' belief that grounds exist for an action by] obtain[ing] the written opinion of a similar health care provider that 'there appears to be evidence of medical negligence' . . . . See Public Acts 2005, No. 05-275, § 2 . . . ." *Dias* v. *Grady*, supra, 292 Conn. 357. The 2005 legislation was part of "a comprehensive effort to control significant and continued increases in malpractice insurance premiums by reforming aspects of tort law, the insurance system and the public health

regulatory system." *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 18, 12 A.3d 865 (2011).

As we also observed in *Dias* with regard to the legislative history of the 2005 legislation, Michael D. Neubert, an attorney representing the Connecticut State Medical Society at a hearing before the judiciary committee, "stated that the [written opinion requirement] was intended to 'ensure that there's a reasonable basis for filing a medical malpractice action under the circumstances. It would help eliminate some of the more questionable and meritless claims filed under the present statutory scheme.' Conn. Joint Standing Committee Hearings, [Judiciary, Pt. 18, 2005 Sess.], p. 5539. [Neubert] also stated that the [requirement 'obviously' was not 'going to impact the majority of cases' and] was targeting [only 'the cases on the margins'] . . . 'where attorneys, based on their own judgment and maybe in good faith have misread what an [expert has] told them . . . . Very often you hear what you want to hear as an attorney, or interpret [what has] been told to you as you want to interpret it. . . . [I]f the [physician is] not willing to sign on the dotted line, maybe [that is] a good indication that this [is not] a good case to bring. . . . If part of what [we are] trying to do here is eliminate those cases [that] should not be in the system then I think this serves to do it.' Id., p. 5553; see also Conn. Joint Standing Committee Hearings, Judiciary, Pt. 19, 2005 Sess., p. 5743, written testimony of Neubert ('the present statutory scheme does not adequately [e]nsure that an attorney filing a medical malpractice action has a reasonable basis to believe that the defendants have violated the standard of care in causing the plaintiff injury')." *Dias* v. *Grady*, supra, 292 Conn. 358 n.7.

Two legislators echoed Neubert's view that the written opinion requirement was intended primarily to reduce the number of frivolous medical malpractice actions by requiring a plaintiff to obtain an opinion

from a similar health care provider substantiating the plaintiff's good faith belief that there had been negligence in the plaintiff's care and treatment. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 18, 2005 Sess., p. 5545, remarks of Senator John A. Kissel (stating that written opinion requirement would greatly improve on then current practice of "[the plaintiff's] attorney just sort of signing off in good faith"); see also 48 S. Proc., Pt. 14, 2005 Sess., p. 4433, remarks of Senator Edward Meyer (observing that written opinion requirement would deal "with . . . [the] bad cases"). Relying in large measure on Neubert's testimony,[6] we concluded in *Dias* that the legislative history "indicates that [the written opinion requirement] was intended to address the problem that some attorneys, either intentionally or innocently, were misrepresenting in the certificate of good faith the information that they had obtained from experts." *Dias* v. *Grady*, supra, 292 Conn. 357–58.

A review of the pertinent judiciary committee debate on the 2005 legislation, however, reveals no discussion or testimony directly addressing the question of what specific kind of information concerning the defendant's alleged negligence is necessary to satisfy the "detailed basis" requirement. During floor debate in the House of Representatives, however, Representative Michael P. Lawlor described the written opinion as a "threshold opinion that, in fact, this is medical malpractice." 48 H.R. Proc., Pt. 31, 2005 Sess., p. 9502. During discussion of the 2005 legislation on the Senate floor, Senator Kissel observed that the written opinion requirement was consistent with the legislative goal of expediting medical malpractice actions because the opinion, which is

---

[6] "This court repeatedly has recognized that testimony before legislative committees regarding proposed legislation sheds light on the problem or issue that the legislature sought to resolve, and the purpose it sought to serve, in enacting a statute." (Internal quotation marks omitted.) *Dias* v. *Grady*, supra, 292 Conn. 358 n.7.

appended to the good faith certificate, would inform the defendant, at the commencement of the action, of the basis of the plaintiff's good faith belief that the defendant had performed negligently. See 48 S. Proc., supra, p. 4428. Senator Kissel explained that, under the prior version of the statute, it could take months, or "even over [one] year, until [the defendant's] counsel and their clients could really narrow down" the basis for the complaint. Id. Senator Kissel also observed that, by allowing the defendant's counsel to start gathering information about the claim "right of[f] the bat," the written opinion requirement would reduce the length of the discovery process and better enable the defendant to assess any settlement offers early in the litigation process. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 18, 2005 Sess., pp. 5545–46.

Upon consideration of the statutory language in light of this legislative history, we agree with the Appellate Court that a written opinion satisfies the "detailed basis" requirement of § 52-190a (a) if it sets forth the basis of the similar health care provider's opinion that there appears to be evidence of medical negligence by express reference to what the defendant did or failed to do to breach the applicable standard of care. In other words, the written opinion must state the similar health care provider's opinion as to the applicable standard of care, the fact that the standard of care was breached, and the factual basis of the similar health care provider's conclusion concerning the breach of the standard of care.[7] This level of detail is sufficient because it satisfies

[7] We note that the dissent reaches the same essential conclusion predicated on the "plain meaning" of the terms "detailed" and "basis" as set forth in Webster's Ninth New Collegiate Dictionary (1983). Specifically, the dissent states that, when the "terms ['detailed' and 'basis' are read] together [in light of their dictionary definitions and] in the context of the statute . . . the author [of the written opinion] should elaborate on the particular standard of care involved in the medical treatment at issue, the manner in which he or she believes it likely was breached and the facts that led to his or her conclusion."

the requirement of § 52-190a (a) that the written opinion shall include both the opinion of the similar health care provider that "there appears to be evidence of medical negligence" and a "detailed basis for the formation of such opinion," that is, a statement setting forth the facts then known to the health care provider on which that opinion of medical negligence is predicated. General Statutes § 52-190a (a).

The foregoing interpretation of § 52-190a (a) also represents an appropriate balance between the two primary competing considerations identified by the legislature, namely, the need for enough specificity to support a good faith belief of the existence of medical negligence, on the one hand, and the fact that, at the time the written opinion is issued, the plaintiff will not yet have had the opportunity to engage in any formal discovery into the alleged malpractice, on the other. Although, in some cases, a more comprehensive explanation of the defendant's alleged negligence will be possible, a blanket requirement mandating a more onerous or stringent standard would serve to deter not only frivolous lawsuits but some meritorious ones, as well, a result that the legislature did not intend to achieve.[8]

Our conclusion finds support in *Dias*, in which we explained that, because "the phrase 'medical negligence,' as used in § 52-190a (a), means breach of the standard of care and was not intended to encompass all of the elements of a cause of action for negligence"; *Dias* v. *Grady*, supra, 292 Conn. 359; the provision does not require the additional opinion that the medical negligence was the cause of the injury. See id., 359–60. In

---

[8] Our conclusion also finds support in the fact that, in the view of the trial court and the defendants, a written opinion that does not satisfy the requirements of § 52-190a (a) renders the plaintiff's action subject to dismissal under § 52-190a (c). As we previously noted, however; see footnote 3 of this opinion; we need not decide that issue for purposes of the present case.

reaching that determination, we emphasized that, "[a]lthough the language and history of § 52-190a (a) indicate that the statute was intended to bar meritless medical malpractice actions, [there is] no evidence that the legislature intended to bar meritorious claims merely because a similar health care provider is not qualified to provide an opinion as to both the applicable standard of care and proximate causation. In the absence of any such evidence, we must presume that the legislature had no such intent." Id. Consistent with the analysis and conclusion in *Dias*, we are persuaded that the legislature did not intend to bar a potentially meritorious claim merely because a similar health care provider, although able to determine that there appears to be evidence of a breach of the standard of care, is unable to identify the specific negligent act or omission involved.

We also agree with the Appellate Court that the written opinion in the present case meets this standard. See *Wilcox* v. *Schwartz*, supra, 119 Conn. App. 815–16. The written opinion provides that its author had "conclude[d] . . . to a reasonable degree of medical probability" that, on the basis of his "education, training and experience as a physician, and [an] examination of . . . Wilcox's medical records," Schwartz had "deviat[ed] from the applicable [standard] of care" and, therefore, was "negligent" in his treatment of Wilcox in "fail[ing] to prevent injury to . . . Wilcox's biliary structures during laparoscopic [gallbladder] surgery . . . ." In other words, the written opinion sets forth the author's professional medical judgment that, consistent with the allegations of the complaint, the applicable standard of care required Schwartz to protect the biliary structures during surgery and that his failure to do so constituted a breach of that standard of care. This explanation, although concise, constitutes a sufficiently clear and

detailed explication of what Schwartz did or failed to do in breaching the applicable standard of care.[9]

The defendants make several arguments in support of their claim that the written opinion in the present case is insufficiently detailed to satisfy § 52-190a (a). In particular, they contend that the opinion does not set forth the applicable standard of care. The defendants also contend that the statement in the opinion that Schwartz failed to protect Wilcox's biliary structures

---

[9] The defendants and the dissent contend that it was improper for the Appellate Court to conclude that the written opinion indicated that the "negligence consisted of [Schwartz'] failure to *protect* Wilcox's bile ducts from injury during surgery"; (emphasis added) *Wilcox* v. *Schwartz*, supra, 119 Conn. App. 815–16; because the written opinion provides only that Schwartz "failed *to prevent injury* to . . . Wilcox's biliary structures during . . . surgery . . . ." (Emphasis added.) Although acknowledging that this is a "subtle" distinction, the defendants maintain that it is significant because the phrase "failed to prevent injury to . . . Wilcox's biliary structures" indicates only that the biliary structures were injured and does not state explicitly that the standard of care required Schwartz to take measures to "protect" the biliary structures. We agree with the Appellate Court that the language of the written opinion, when read in proper context, expresses the view of its author that the standard of care required Schwartz to take appropriate measures to protect Wilcox's biliary structures from injury during the surgery and, further, that he failed to do so. See *Wilcox* v. *Schwartz*, supra, 815–16. Indeed, we discern no material difference between a failure to protect the biliary structures and a failure to prevent injury to those structures, and neither the defendants nor the dissent identifies any such distinction.

The defendants also assert that the Appellate Court improperly relied on the fact that the written opinion addresses the allegations of negligence pleaded in the complaint in assessing the sufficiency of that opinion under § 52-190a (a). They maintain that a written opinion must "be judged on its own contents rather than the fact that it [mimics] the complaint." The defendants have identified no reason, and we are aware of none, why the written opinion must be read in isolation from the complaint. Indeed, to comply with § 52-190a (a), the written opinion necessarily will mirror at least some of the allegations in the complaint; if it does not, it will not fulfill its purpose of substantiating the plaintiff's good faith belief that reasonable grounds exist for the action. Moreover, to the extent that a complaint alleges facts sufficient to support a claim of medical malpractice, a written opinion that tracks those allegations ordinarily will suffice for purposes of § 52-190a (a).

is tantamount to a res ipsa loquitur claim because it suggests that negligence can be inferred from the injury alone.[10] The defendants further argue that the doctrine of res ipsa loquitur was not pleaded in the present case, and, even if it had been, it is rarely relied on in medical malpractice actions. In addition, the defendants assert that a written opinion that Schwartz was negligent in failing to prevent injury is inadequate under § 52-190a (a) because the purpose of the statutory "detailed basis" requirement is to notify a defendant not only of the standard of care that was breached but also the specific manner in which it was breached. We are not persuaded by these arguments.

First, we disagree with the defendants that the written opinion in the present case fails to identify the applicable standard of care and a breach of that standard of care. As we previously stated, the opinion provides that the standard of care required Schwartz to protect Wilcox's biliary structures during the laparoscopic gallbladder surgery and that his failure to do so caused injury to those structures. Although the defendants may disagree with the standard of care identified in the written opinion and with the author's assertion that Schwartz had deviated from it, that disagreement does not render the opinion insufficient under § 52-

---

[10] "The doctrine of res ipsa loquitur, literally the thing speaks for itself, permits a jury to infer negligence when no direct evidence of negligence has been introduced. . . . The doctrine of res ipsa loquitur applies only when two prerequisites are satisfied. First, the situation, condition or apparatus causing the injury must be such that in the ordinary course of events no injury would have occurred unless someone had been negligent. Second, at the time of the injury, both inspection and operation must have been in the control of the party charged with neglect. . . . When both of these prerequisites are satisfied, a fact finder properly may conclude that it is more likely than not that the injury in question was caused by the defendant's negligence." (Citation omitted; internal quotation marks omitted.) *Godwin* v. *Danbury Eye Physicians & Surgeons, P.C.*, 254 Conn. 131, 140, 757 A.2d 516 (2000).

190a (a) when the information contained therein was sufficient to place the defendants on notice of the nature of the alleged medical negligence.

We also agree with the plaintiffs that an opinion by a similar health care provider that there appears to be evidence of medical negligence properly may be based on evidence of an injury or outcome that the medical professional believes is highly unlikely to have occurred in the absence of negligence. Such a conclusion may be reasonable when, for example, an injury occurs to an organ that is rarely, if ever, injured during a particular procedure, and the plaintiff's medical records do not reveal an explanation for the injury that does not involve negligence. In such circumstances, the plaintiff's malpractice claim is predicated not on the doctrine of res ipsa loquitur but, rather, on the considered opinion of a medical professional that the injury would not have occurred but for the defendant's negligence.

We therefore disagree with the defendants and the dissent that a written opinion always must identify the precise manner in which the standard of care was breached to satisfy the requirements of § 52-190a (a). The opinion necessarily is obtained prior to the commencement of the action, before the plaintiff will have had the opportunity to engage in pretrial discovery under the rules of practice governing such discovery. When, as in the present case, a health care professional has opined that the injuries sustained by the plaintiff would not have occurred but for the defendant's breach of the standard of care, that opinion is sufficient to satisfy § 52-190a (a). Of course, the plaintiff may be able to obtain more particularized information about the alleged negligence during the course of pretrial discovery. But, at least in a case like the present one, in which a similar health care provider opines that, in essence, the injury would not have occurred in the

absence of medical negligence, § 52-190a (a) does not require such specificity.[11] This is particularly true when,

[11] The dissent asserts that we are "attempting to rehabilitate" the otherwise "inadequate written opinion . . . by paraphrasing it, speculating as what is implied and supplying additional explanation that the opinion simply does not contain." Footnote 7 of the dissenting opinion. In particular, the dissent claims that it is unreasonable to read the opinion as stating that Schwartz would not have damaged Wilcox's biliary structures unless he had been negligent in performing the laparoscopic gallbladder surgery. See id. We disagree with the dissent's assertion because we cannot perceive how the written opinion reasonably may be read to connote anything else. The opinion expresses the author's belief, based on "a reasonable degree of medical probability," that Schwartz "deviat[ed] from the applicable [standard] of care" in that he "failed to prevent injury to . . . Wilcox's biliary structures during laparoscopic [gallbladder] surgery," and that, "[a]s a result of [this] negligent treatment . . . Wilcox suffered severe, painful and permanent injuries." Thus, the written opinion states that, in the author's view, Schwartz was negligent *because* Schwartz caused injury to—that is, he failed to protect—Wilcox's biliary structures. In other words, it is the author's opinion that, but for Schwartz' negligence, the biliary structures would not have been injured. The dissent, however, asserts that this constitutes an insufficient statement of negligence because it fails to indicate "what . . . led the author to reach [his or her] conclusion." On the contrary, the explanation that Schwartz was negligent because he failed to prevent injury to Wilcox's biliary structures necessarily reflects the author's view that the standard of care governing the performance of laparoscopic gallbladder surgery requires that the patient's biliary structures remain free from injury during the surgery. Although the author might have expressed this opinion in more direct or explicit terms, there is no need to "rehabilitate" the opinion or to speculate about its conclusion in order to understand the author's professional opinion as to why Schwartz was negligent: the opinion is sufficient for purposes of § 52-190a (a) because it conveys the author's opinion that Schwartz was negligent due to the fact that he performed the surgery without protecting Wilcox's biliary structures from injury.

The dissent further contends that the written opinion is inadequate, first, because "[i]t is axiomatic that the fact of a bad result, standing alone, does not prove wrongdoing by a physician" and, second, because "inadvertent injury to a patient during surgery may, or may not, constitute negligence," and "[i]t may be the case that the injury at issue is a necessary risk accompanying the surgical procedure during which the injury occurred, in which case there is no malpractice." We have no quarrel with these general propositions, for they merely reflect the uncontroversial principle that the doctrine of res ipsa loquitur, which permits the jury to infer negligence although no direct evidence of negligence has been adduced, ordinarily does not apply to medical malpractice claims. Contrary to the dissent's contention, however, the inapplicability of that doctrine to the present case does not support the contention that the written opinion in the present case is inadequate because it expressly provides that Schwartz was negligent in performing the laparoscopic gallbladder surgery on Wilcox.

as in the present case, the similar health care provider reports that the defendant negligently failed to document adequately the surgical procedure.[12] In such circumstances, we do not believe that the legislature intended to bar potentially meritorious medical malpractice claims simply because it is impossible for the plaintiff to identify, prior to discovery, the particular act or omission that caused the injury.

Indeed, in certain cases, it may be impossible to determine the precise cause of the injury even after extensive discovery. In those cases, the plaintiff's expert nevertheless may be able to opine, to a reasonable degree of medical certainty, that the injury would not have occurred in the absence of medical negligence. As a general matter, there is no reason why that opinion evidence would not be sufficient to survive a motion for a directed verdict. If such expert testimony is suffi-

---

[12] The dissent ignores the fact that, according to the author of the written opinion, Schwartz also was negligent because he "failed to accurately document the surgical procedure" that he performed on Wilcox. In evaluating the sufficiency of the written opinion in the present case, we consider the fact that when, as is alleged in the present case, the surgical procedure is inadequately documented, it may be difficult or even impossible for a similar health care provider to ascertain the precise cause of the patient's injuries. Thus, we disagree with the dissent that the written opinion in the present case is deficient because it contains no statement "specifying which, if any, precautions Schwartz apparently failed to take . . . ." Under the circumstances, it is perfectly understandable that the author of the opinion could not discern, at this stage of the case, which precaution or precautions Schwartz negligently failed to take. We also disagree with the dissent that, because § 52-190a (a) "seems to allow for some measure of speculation" by the similar health care provider who authors the written opinion; footnote 5 of the dissenting opinion; the author in the present case was required to engage in such conjecture with respect to the precautions that Schwartz did not take. We see no reason why the written opinion is rendered insufficient under § 52-190a (a) merely because it does not *speculate* as to the precautions that Schwartz failed to take, especially when, as in the present case, the opinion states that Schwartz did not document the surgery properly. Put differently, for present purposes, we do not believe that conjectural observations about what might or might not have occurred during the surgery are necessary to satisfy the "detailed basis" requirement of § 52-190a (a).

cient to permit the case to go to the jury at the conclusion of the plaintiff's evidence, it would be unreasonable—indeed, it would be bizarre—to conclude that the same expert opinion nevertheless is insufficient to satisfy the "detailed basis" requirement of § 52-190a (a) at the very inception of the litigation.

Finally, the defendants take issue with our interpretation of the pertinent legislative history as supporting the conclusion that the written opinion in the present case is sufficient under § 52-190a (a). In support of their contention that the opinion was insufficient, the defendants maintain that the requirement of a written opinion was intended to reduce medical malpractice insurance premiums by making it more difficult for plaintiffs to bring medical malpractice cases and to expedite the resolution of medical malpractice actions by notifying the defendant or defendants of the basis for the plaintiff's claim when the action is commenced. We do not agree that the legislative history supports the defendants' claim.

With respect to their first contention, the defendants rely on a statement by Representative Lawlor, who, in discussing the 2005 legislation on the floor of the House of Representatives, remarked that the written opinion requirement would make "it much more difficult to bring a medical malpractice action in court." 48 H.R. Proc., supra, p. 9445. Our review of Representative Lawlor's remarks, however, reveals that the foregoing comment was not addressed to the "detailed basis" language of the legislation but, rather, to the fact that the written opinion would have to be attached to the complaint. See id., p. 9501, remarks of Representative Lawlor. In Representative Lawlor's view, requiring plaintiffs to attach the full text of the opinion to the complaint would make it more difficult to obtain such an opinion because similar health care providers "would be reluctant to render an opinion that another

physician had . . . engaged in malpractice . . . [due to] the likelihood that there would be some backlash against [them] from other physicians when it comes to referrals [and the like]." Id., p. 9502. Accordingly, Representative Lawlor's remarks do not support the defendants' interpretation of the statute.

Indeed, as we previously indicated, although the legislative history makes clear that the written opinion requirement was intended to reduce the number of frivolous lawsuits, there is nothing in that history to suggest that the legislature intended to achieve this salutary result through the "detailed basis" requirement of the statute. To the contrary, as we previously noted, the legislative history strongly suggests that the written opinion requirement was not intended to impose any additional burden on those plaintiffs seeking redress for reasonably investigated, potentially meritorious claims. The purpose of the requirement, rather, was to eliminate those claims that are so lacking in merit that no similar health care provider would be willing to express even a preliminary opinion that the plaintiff's injuries were the result of medical negligence.

With respect to their second contention, the defendants rely on Senator Kissel's statement that the written opinion would expedite the resolution of a medical malpractice case by notifying the defendant, at the inception of the case, of the exact basis for the plaintiff's claim. See 48 S. Proc., supra, pp. 4428–29. The defendants contend that the written opinion in this case, which merely provides that Schwartz negligently failed to prevent injury to Wilcox's biliary structures, "hardly seems consistent with this legislative purpose." We disagree. For the reasons previously identified, we believe that the written opinion in the present case satisfies the requirements of § 52-190a (a) because it sets forth a similar health care provider's opinion that the applicable standard of care required Schwartz to prevent injury

to Wilcox's biliary structures during surgery and that he failed to do so.

Finally, the defendants contend that the failure of the legislature, in 2010, to pass a bill entitled, "An Act Concerning Certificates of Merit," supports their claim that the "detailed basis" language of § 52-190a (a) requires greater detail than that which is contained in the written opinion in the present case. See House Bill No. 5537, 2010 Sess. According to the defendants, that bill would have amended § 52-190a (a) by replacing the phrase "includes a detailed basis for the formation of such opinion" with the phrase "which states one or more specific breaches of the prevailing professional standard of care." Id. In the defendants' view, because this bill "would have watered down the 'detail' requirement" of the present statute, it is apparent that the written opinion in the present case does not satisfy § 52-190a (a). We are not persuaded.

"Although we have relied on the failure to amend a statute as an indication of legislative intent regarding that statute or statutes within the same legislative scheme; see, e.g., *Anderson* v. *Ludgin*, 175 Conn. 545, 555, 400 A.2d 712 (1978); cf. *State* v. *McVeigh*, 224 Conn. 593, 619–21, 620 A.2d 133 (1993) (subsequent amendments held not relevant to legislative intent at time of enactment of underlying statute); we hesitate unilaterally to assign motives to the legislature [when] it has failed to enact a statute other than the one whose interpretation is before us." *State* v. *Miranda*, 245 Conn. 209, 230–31 n.24, 715 A.2d 680 (1998), overruled on other grounds by *State* v. *Miranda*, 274 Conn. 727, 878 A.2d 1118 (2005). "[W]hen we have drawn on legislative rejection of proposed statutory amendments as the basis for an inference of legislative intent, ordinarily we have viewed those failures as indicative of legislative approval of an existing interpretation of substantive law. . . . [Because, however] [t]here is no authorita-

tive prior judicial interpretation with respect to which the legislature could have been expressing its approval in this case"; (citation omitted; internal quotation marks omitted]) *State* v. *McVeigh*, supra, 621–22; we are unwilling to draw such an inference.[13]

For the foregoing reasons, we conclude that the written opinion in the present case satisfies the "detailed basis" requirement of § 52-190a (a). We therefore agree with the Appellate Court that the judgment of the trial court must be reversed.

The judgment of the Appellate Court is affirmed.

In this opinion McLACHLAN, EVELEIGH and VER-TEFEUILLE, Js., concurred.

ROGERS, C. J., with whom NORCOTT and ZARELLA, Js., join, dissenting. General Statutes § 52-190a (a) requires a party filing a medical malpractice action to conduct a reasonable inquiry to ensure that there are grounds for a good faith belief that the party has received negligent care or treatment, to append to his or her complaint "a certificate of the attorney or party filing the action . . . that such reasonable inquiry gave rise to [that] good faith belief," and finally, to "obtain a written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence *and includes a detailed basis for the formation of such opinion. . . .*" (Emphasis added.) Failure to obtain and file the written opinion required by this provision "shall be grounds for the dismissal of the action." General Statutes § 52-190a (c). I disagree

---

[13] Furthermore, although the bill would have eliminated the "detailed basis" language from § 52-190a (a), the bill would have amended the statute to require that a written opinion identify "specific breaches of the prevailing professional standard of care." House Bill No. 5537, 2010 Sess. It is not clear whether this language was intended to ease or liberalize the written opinion requirement or merely to clarify the meaning of the "detailed basis" requirement. For that reason, as well, we refrain from attaching any significance to the fact that the bill ultimately was not passed.

with the majority that a bare statement that the named defendant, Daniel S. Schwartz, "failed to prevent injury to [the] . . . biliary structures [of the named plaintiff, Kristy Wilcox][1] during laparoscopic [gallbladder] surgery" satisfies the "detailed basis" requirement of the statute.

After examining the legislative history and purpose of § 52-190a (a), the majority explains that the "detailed basis" requirement of the statute may be satisfied by a written opinion that "sets forth the basis of the similar health care provider's opinion that there appears to be evidence of medical negligence by express reference to what the defendant did or failed to do to breach the applicable standard of care. In other words, the written opinion must state the similar health care provider's opinion as to the applicable standard of care, the fact that the standard of care was breached, and the factual basis of the similar health care provider's conclusion concerning the breach of the standard of care." That is a reasonable explanation of what the statute requires, with which I have no quarrel. The majority concludes, however, that the written opinion provided in this case, which is little more than an unadorned statement that Schwartz failed to prevent injury to Wilcox, satisfies the foregoing standard. Because I am unconvinced by the majority's analysis and find its conclusion to be contrary to the legislative intent underlying the "detailed basis" requirement of § 52-190a (a), I respectfully dissent.

I begin with the key statutory phrase, "detailed basis," by considering the plain meaning of the terms that comprise it.[2] "Basis" is defined, most pertinently, as "some-

---

[1] See footnote 1 of the majority opinion.

[2] In the absence of statutory guidance regarding the definition of a word used in a statute, we "may appropriately look to the meaning of the . . . [word] as commonly expressed in the law and in dictionaries." (Internal quotation marks omitted.) *State* v. *Silas S.*, 301 Conn. 684, 693, 22 A.3d 622 (2011).

thing on which something else [here, the similar health care provider's opinion that there appears to be evidence of medical negligence] is established or based . . . ." Webster's Ninth New Collegiate Dictionary (1983), p. 134. "Detail" means "extended treatment of or attention to particular items," while something "detailed" is "marked by abundant detail or by thoroughness in treating small items or parts . . . ." Id., p. 345. Reading these terms together in the context of the statute suggests that the author of the written opinion must explain, in thorough fashion and with particularity, the foundation for his or her assessment of apparent negligence. More specifically, the author should elaborate on the particular standard of care involved in the medical treatment at issue, the manner in which he or she believes it likely was breached and the facts that led to his or her conclusion.

To the extent that ambiguity remains as to the degree of detail required, the legislative history of § 52-190a (a) indicates that our lawmakers intended that the written opinion provide a clear and complete explanation of the standard of care and its apparent breach, rather than a conclusory statement that the defendant was negligent. As we have explained, when § 52-190a originally was enacted as part of the Tort Reform Act of 1986; see Public Acts 1986, No. 86-338, § 12; it required a medical malpractice plaintiff to conduct a reasonable inquiry into his or her allegations of negligence and to file a certificate attesting to his or her good faith belief that there were grounds for the action, but did not require the plaintiff to obtain and file a supporting, written opinion of a similar health care provider. *Dias* v. *Grady*, 292 Conn. 350, 357, 972 A.2d 715 (2009). "[T]he purpose of the original version of § 52-190a was to prevent frivolous medical malpractice actions" by mandating an adequate investigation prior to the filing of an action. Id.

In 2005, the requirement of filing the written opinion of a similar health care provider was added to § 52-190a (a) as part of Public Acts 2005, No. 05-275 (P.A. 05-275), which included a comprehensive array of measures aimed at the overall goal of lowering medical malpractice insurance premiums. See id., 358–59 n.7. As the majority explains in the present case, one purpose of the written opinion requirement was to reinforce the statute's original purpose of dissuading frivolous malpractice actions by " 'address[ing] the problem that [had developed whereby] some attorneys, either intentionally or innocently, were misrepresenting in the certificate of good faith the information that they had obtained from experts.' [Id., 358]." Requiring a similar health care provider to vouch directly for the allegations of negligence would provide a check against such misrepresentations.

Closer examination of the legislative history underlying P.A. 05-275 reveals that the amendment to § 52-190a (a) had a secondary purpose that further would help lower malpractice insurance premiums, namely, to promote the more efficient resolution of potentially *meritorious* claims by requiring a plaintiff to disclose as much as possible about the nature of his or her claim at the very outset of the action.[3] To that end, when introducing the legislation, Representative Michael P. Lawlor explained that a similar health care provider "would have to state, *in explicit detail*, his or her opinion that this is a meritorious claim"; (emphasis added) 48 H.R. Proc., Pt. 31, 2005 Sess., p. 9446; and that "the *entire opinion* would be there attached to the complaint." (Emphasis added.) Id., p. 9501. Senator Andrew J.

---

[3] This requirement complemented §§ 3 and 4 of P.A. 05-275, which also were aimed at promoting speedier resolution of medical malpractice claims by, respectively, providing a mechanism to have certain claims transferred in timely fashion to the complex litigation docket and adding provisions to foster early settlement of cases.

McDonald used language suggesting that the opinion should have real substance, referring to it repeatedly as a "report," and explaining that it was required to be "presented in a detailed fashion . . . ." 48 S. Proc., Pt. 14, 2005 Sess., p. 4411. Senator John A. Kissel, who had worked on the legislation, stated that appending the written opinion to the complaint would "help . . . defense counsel and their clients right into the ballpark, right at the inception of the medical malpractice case," and address the preexisting problem that "months could go by, even over a year, until defense counsel and their clients could really narrow down exactly what was the basis for . . . the plaintiff's claim that there was medical malpractice and why they had brought that case." Id., pp. 4428–29. By requiring the inclusion of the written opinion with the complaint, Senator Kissel explained, "We're trying to speed it up. We're trying to expedite it." Id., p. 4429. At the judiciary committee hearing on the amendments, Senator Kissel stated that having "the substance of the report appended to the complaint" would enable defense counsel to "review the nuts and bolts of what's in there and make a reasonable determination" regarding the claim. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 18, 2005 Sess., p. 5545. Michael D. Neubert, an attorney testifying on behalf of the Connecticut State Medical Society at the committee hearing, agreed with Senator Kissel that appending the "doctor's written statement . . . just makes good sense. Clearly that's going to help defendants accept cases earlier . . . [and] perhaps lead to a quicker resolution in many cases." Id., p. 5548.

The wording of § 52-190a (a), as amended by P.A. 05-275, is consistent with the legislature's dual purpose of eliminating frivolous lawsuits and hastening potentially meritorious ones. The relevant portion of § 52-190a (a) begins by stating that, "[t]o show the existence of . . . good faith, the claimant or the claimant's attorney . . .

shall obtain a written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence . . . ." If that were all the statute required, it would be sufficient to accomplish the purpose of deterring frivolous actions by mandating that a medical professional vouch for the certification by the claimant or the claimant's attorney that there is a good faith basis for bringing the action. Section 52-190a (a) was amended further, however, to require that the opinion include "a detailed basis for [its] formation . . . ." P.A. 05-275, § 2 (a). Unless this language is to be regarded as superfluous,[4] the legislature must have had a reason for including it. I believe that reason was articulated clearly by the sponsors of the legislation as quoted in this dissent, namely, to provide defendants with specific information about the claim at the outset of the litigation so as to reduce the time necessary to resolve it.[5]

---

[4] When interpreting statutes, we presume that "the legislature did not intend to enact meaningless provisions. . . . [S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Internal quotation marks omitted.) *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, 301 Conn. 268, 303, 21 A.3d 759 (2011).

[5] I recognize that the information available to a similar health care provider who provides a written opinion pursuant to § 52-190a (a) necessarily is limited in comparison to the information that becomes available once discovery is completed. It is important to recognize, however, that § 52-190a (a) requires the author to opine only that there "*appears* to be evidence of medical negligence"; (emphasis added); and, in so doing, seems to allow for some measure of speculation given the timing of the requirement. Thus, an opinion need not include every detail that later might emerge via discovery or establish negligence definitively, but at the same time, it should be adequate to put a defendant on notice of the nature of the plaintiff's claims and, thereby, facilitate discovery or settlement. If a similar health care provider is unable to articulate the foundation for his or her theory that there *apparently* was negligent treatment or care, the existence of a good faith basis for the action is questionable, and the action begins to resemble a fishing expedition. Notably, without a showing of malice, § 52-190a (a) exempts the author of a written opinion from personal liability for damages to a defendant by reason of having provided an opinion that later proves to be incorrect.

In light of the foregoing, I am unable to conclude, as does the majority, that a bare statement that Schwartz "failed to prevent injury to . . . Wilcox's biliary structures during laparoscopic [gallbladder] surgery" satisfies the "detailed basis" requirement of § 52-190a (a). The written opinion does not explain with any particularity the standard of care, namely, what precautions normally are taken by physicians skilled in laparoscopic gallbladder surgery to prevent injuries to nearby anatomical structures. Nor does the written opinion purport to assess how the standard was breached by specifying which, if any, precautions Schwartz apparently failed to take,[6] and what, in the available information, led the author to reach this conclusion.[7]

"[T]o prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care

---

[6] Compare, e.g., *Landi* v. *Wertheim*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-06-5001608-S (October 2, 2006). In *Landi*, the trial court held the following written opinion to be sufficiently detailed under § 52-190a (a): "On [June 16, 2004] [the plaintiff] underwent a total abdominal hysterectomy plus bilateral [salpingo-oophorectomy]. On review of the notes associated with this procedure, I find that the injury suffered by [the plaintiff] is directly related to the lack of appropriate caution practiced by the operating surgeon. *The absence of uteral stents being placed prior* [*to*] *the surgery*, as well as the inadequate evaluation once an injury was suspected, *resulted in the unfortunate outcome.*" (Emphasis added; internal quotation marks omitted.)

[7] It appears that the majority is attempting to rehabilitate the inadequate written opinion supplied by the plaintiffs by paraphrasing it, speculating as to what is implied and supplying additional explanation that the opinion simply does not contain. For instance, the majority changes "failed to prevent injury" to "failed to protect," and avers that a similar health care provider in the present case "opine[d] that, in essence, the injury would not have occurred in the absence of medical negligence . . . ." As I have explained, our legislators when mandating attachment of a written opinion envisioned that it be "explicit"; 48 H.R. Proc., supra, p. 9446; and "presented in a detailed fashion"; 48 S. Proc., supra, p. 4411; and that it would enable a defendant to "narrow down exactly what was the basis for the determination of . . . the plaintiff's claim that there was medical malpractice and why they had brought that case." Id., pp. 4428–29. If the written opinion in the present case complied with these requirements, it would obviate the need for any judicial reconstruction.

for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury." (Internal quotation marks omitted.) *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 656, 904 A.2d 149 (2006). We have made clear that a § 52-190a (a) written opinion must address the first two elements only, and is not required to speak to the third. *Dias* v. *Grady*, supra, 292 Conn. 359. Here, the written opinion, in essence, has identified an injury and suggested that Schwartz caused it by failing to do some unarticulated thing. In short, the written opinion omits entirely the required information, and includes only information that we have deemed to be unnecessary. It is axiomatic that the fact of a bad result, standing alone, does not prove wrongdoing by a physician; *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 576, 864 A.2d 1 (2005); and that inadvertent injury to a patient during surgery may, or may not, constitute negligence. See generally annot., 37 A.L.R.3d 464 (1971). It may be the case that the injury at issue is a necessary risk accompanying the surgical procedure during which the injury occurred, in which case there is no malpractice. Id., § 3 [b], p. 472.

For the reasons explained herein, I respectfully dissent.